# WATERBURY TWIN, LLC, ET AL. *v.* RENAL TREATMENT CENTERS–NORTHEAST, INC., ET AL.
## (SC 18218)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued February 10—officially released July 14, 2009

*Houston Putnam Lowry,* with whom was *Julie A. Morgan,* for the appellants (plaintiffs).

*John F. Conway*, with whom was *W. Glen Pierson*, for the appellees (defendants).

Opinion

NORCOTT, J. The dispositive issue in this appeal is whether a landlord, after withdrawing its complaint in a summary process action, is required to serve a new notice to quit pursuant to General Statutes § 47a-23[1]

[1] General Statutes § 47a-23 provides in relevant part: "(a) When the owner or lessor, or the owner's or lessor's legal representative, or the owner's or lessor's attorney-at-law, or in-fact, desires to obtain possession or occupancy of any land or building, any apartment in any building, any dwelling unit, any trailer, or any land upon which a trailer is used or stands, and (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons: (A) By lapse of time; (B) by reason of any expressed stipulation therein; (C) violation of the rental agreement or lease or of any rules or regulations adopted in accordance with section 47a-9 or 21-70; (D) nonpayment of rent within the grace period provided for residential property in section 47a-15a or 21-83; (E) nonpayment of rent when due for commercial property; (F) violation of section 47a-11 or subsection (b) of section 21-82; (G) nuisance, as defined in section 47a-32, or serious nuisance, as defined in section 47a-15 or 21-80 . . . such owner or lessor, or such owner's or lessor's legal representative, or such owner's or lessor's attorney-at-law, or in-fact, shall give notice to each lessee or occupant to quit possession or occupancy of such land, building, apartment or dwelling unit, at least three days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy.

"(b) The notice shall be in writing substantially in the following form: 'I (or we) hereby give you notice that you are to quit possession or occupancy of the (land, building, apartment or dwelling unit, or of any trailer or any land upon which a trailer is used or stands, as the case may be), now occupied by you at (here insert the address, including apartment number or other designation, as applicable), on or before the (here insert the date) for the following reason (here insert the reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import, also the date and place of signing notice). A.B.'. If the owner or lessor, or the owner's or lessor's legal representative, attorney-at-law or attorney-in-fact knows of the presence of an occupant but does not know the name of such occupant, the notice for such occupant may be addressed to such occupant as 'John Doe', 'Jane Doe' or some other alias which reasonably characterizes the person to be served.

"(c) A copy of such notice shall be delivered to each lessee or occupant or left at such lessee's or occupant's place of residence or, if the rental agreement or lease concerns commercial property, at the place of the com-

prior to filing a new summary process action against its tenant. The plaintiffs, Waterbury Twin, LLC, and 150 MH, LLC, appeal[2] from the judgment of the trial court dismissing their summary process action against the defendants, Renal Treatment Centers–Northeast, Inc. (Renal Treatment Centers), and Davita, Inc. (Davita).[3] Because we conclude that the plaintiffs' withdrawal of the initial summary process action required them to serve a new notice to quit prior to commencing a new summary process action against the defendants, we affirm the judgment of the trial court.

The record reveals the following facts and procedural history. In August, 2007, the parties entered into a written agreement whereby the plaintiffs agreed to lease commercial premises in Waterbury to the defendants for ten years. Renal Treatment Centers entered into possession of the premises on August 30, 2007, and has been in possession since.[4] The plaintiffs allege that the defendants have failed to pay common area maintenance charges when due, or within any applicable grace period from October, 2007, through January, 2008, and also have caused various damages to the utilities on

mercial establishment by a proper officer or indifferent person. Delivery of such notice may be made on any day of the week.

"(d) With respect to a month-to-month or a week-to-week tenancy of a dwelling unit, a notice to quit possession based on nonpayment of rent shall, upon delivery, terminate the rental agreement for the month or week in which the notice is delivered, convert the month-to-month or week-to-week tenancy to a tenancy at sufferance and provide proper basis for a summary process action notwithstanding that such notice was delivered in the month or week after the month or week in which the rent is alleged to be unpaid. . . ."

[2] The plaintiffs appealed from the judgment of the trial court to the Appellate Court. We subsequently granted the plaintiffs' motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[3] Hereafter, we refer to Renal Treatment Centers and Davita collectively as the defendants and individually by name when appropriate.

[4] Davita agreed to guarantee the payment of all of Renal Treatment Centers' lease obligations to the plaintiffs.

the premises during the construction process. On January 18, 2008, the plaintiffs caused a notice to quit for the nonpayment of rent to be served on the defendants, directing them to vacate the premises on or before January 23, 2008.[5] The notice to quit was served on January 19, 2008. The defendants, however, have refused to vacate the premises.

On January 31, 2008, the plaintiffs served the defendants with a summary process complaint (initial complaint) with a return date of February 7, 2008, which the marshal returned to the court on February 5, 2008. On February 11, 2008, the defendants moved to dismiss the initial complaint, contending that it violated General Statutes § 47a-23a[6] of the summary process statutes

---

[5] The notice to quit provided in relevant part: "NOTICE is hereby given to you that you are to quit possession or occupancy of premises now occupied by you at 150 Mattatuck Heights Road, Waterbury, Connecticut (as specified on the attached exhibits) on or before January 23, 2008 for the following reasons: (1) by reason of any expressed stipulation therein; (2) nonpayment of rent when due for commercial property. . . ." The notice to quit further advised the defendants that "[a]ny payments tendered after this notice is served will not be accepted for rent. Such payments will be applied first to costs, attorney's fees (to the extent applicable) and then to use and occupancy, *with full reservation of rights to continue with the eviction action.*

"If a judicial proceeding for an eviction is instituted, you may present a defense in that proceeding." (Emphasis in original.)

[6] General Statutes § 47a-23a (a) provides: "If, at the expiration of the three days prescribed in section 47a-23, the lessee or occupant neglects or refuses to quit possession or occupancy of the premises, any commissioner of the Superior Court may issue a writ, summons and complaint which shall be in the form and nature of an ordinary writ, summons and complaint in a civil process, but which shall set forth facts justifying a judgment for immediate possession or occupancy of the premises and make a claim for possession or occupancy of the premises. If the claim is for the possession or occupancy of nonresidential property, the writ, summons and complaint may also make a claim for the forfeiture to the plaintiff of the possessions and personal effects of the defendant in accordance with section 47a-42a. If the plaintiff has properly issued a notice to quit possession to an occupant by alias, if permitted to do so by section 47a-23, and has no further identifying information at the time of service of the writ, summons and complaint, such writ, summons and complaint may also name and serve such occupant or occupants as defendants. In any case in which service is to be made upon an

because it had not been returned to court at least three days before the return day. On February 15, 2008, the plaintiffs withdrew the initial complaint.

The following day, February 16, 2008, the plaintiffs commenced this summary process action by issuing a new summary process complaint (new complaint) with a return date of March 4, 2008, which was served on February 25, 2008, and returned to the court on February 26, 2008. The plaintiffs did not serve a new notice to quit prior to issuing the new complaint in this action. Thereafter, on February 27, 2008, the defendants notified the plaintiffs by letter that they had assumed that the notice to quit had been withdrawn and the lease had been reinstated. Additionally, they enclosed a rent check for the month of March, 2008.[7]

The plaintiffs thereafter acknowledged receiving the rent check, but informed the defendants that the notice to quit had not been withdrawn and that the lease would not be reinstated. The plaintiffs accepted the check, but applied it to the damages owed by the defendants.

The defendants then moved to dismiss this action for lack of subject matter jurisdiction, claiming that the plaintiffs, after withdrawing the initial complaint, were required to serve a new notice to quit prior to commencing this summary process action. The trial court, relying on the Appellate Court's decision in *Housing Authority* v. *Hird*, 13 Conn. App. 150, 156–57, 535 A.2d 377, cert.

occupant or occupants identified by alias, the complaint shall contain an allegation that the plaintiff does not know the name of such occupant or occupants. Such complaint shall be returnable to the Superior Court. Such complaint may be made returnable six days, inclusive, after service upon the defendant and shall be returned to court at least three days before the return day. Such complaint may be served on any day of the week. Notwithstanding the provisions of section 52-185 no recognizance shall be required of a complainant appearing pro se."

[7] The rent check was issued by Total Renal Care, Inc., another subsidiary of Davita.

denied, 209 Conn. 825, 552 A.2d 433 (1988), concluded that the plaintiffs' withdrawal of the initial complaint had revived the lease by returning the parties to "square one," namely, "the status quo prior to the service of the notice to quit." The trial court concluded, therefore, that the plaintiffs were required to serve a new notice to quit prior to commencing the current action. The trial court further stated, in dicta, that the notice to quit was itself invalid, notwithstanding the fact that it "tracked" the language of § 47a-23, because it failed to provide adequate notice as to which moneys were due, specifically, base rent or additional rent. Accordingly, the trial court granted the defendants' motion to dismiss and rendered judgment dismissing the new complaint. This appeal followed.

On appeal, the plaintiffs claim that the trial court improperly concluded that the withdrawal of a summary process action automatically withdraws the underlying, otherwise valid, notice to quit, thus restoring the written lease and requiring the landlord to serve a new notice to quit prior to filing a second summary process action.[8] The plaintiffs argue that serving a new notice to quit does not promote judicial economy, and rely on a line of trial court cases holding that a subsequent summary process action may be maintained using

---

[8] We note that the plaintiffs also raise, as a second issue in this appeal, the propriety of the trial court's determination, in dicta, of the validity of the notice to quit. Specifically, the plaintiffs claim that the trial court improperly concluded that, without additional language, the notice to quit failed to provide adequate notice to the defendants, despite the fact that it tracked the language of § 47a-23. See footnotes 1 and 5 of this opinion. We need not reach this claim in light of our conclusion herein that the trial court lacked subject matter jurisdiction over the summary process action because of the plaintiffs' failure to serve a new notice to quit. We note, however, that we have upheld as valid a nearly identical notice to quit in *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5–6, 931 A.2d 837 (2007); see also *Thomas E. Golden Realty Co.* v. *Society for Savings*, 31 Conn. App. 575, 580, 626 A.2d 788 (1993) (notice to quit is valid with "requisite specificity" if it " 'substantially tracks' " language of § 47a-23).

a previously served, otherwise valid notice to quit.[9] The plaintiffs further contend that the Appellate Court's decisions in *Housing Authority* v. *Hird*, supra, 13 Conn. App. 150, and *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, 16 Conn. App. 574, 548 A.2d 744, cert. denied, 209 Conn. 826, 552 A.2d 432 (1988), are not controlling in the present case because they involved facially defective notices to quit. In response, the defendants argue that, under *Hird*, the withdrawal of the prior summary process action had the effect of restoring the parties' written lease, thereby requiring the landlord to a serve a new notice to quit prior to commencing a new summary process action. The defendants rely on a trial court decision emphasizing the promotion of judicial economy by this bright line rule,[10] and note that the plaintiffs could have either amended their defective return date rather than withdrawing the initial complaint, or simply served a new notice to quit. The defendants also posit that permitting a notice to quit to survive the withdrawal of the summary process action would create uncertainty in the subsequent landlord-tenant relationship, should such proceedings not immediately be reinstituted. We agree with the defendants and conclude that, if a landlord has withdrawn a summary process action filed against a tenant, the landlord is required to serve a new notice to quit pursuant to § 47a-23 prior to commencing another summary process action against that tenant under § 47a-23a.

[9] See, e.g., *Stratford* v. *Sullivan*, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. X08-CV-02-0189286-S (December 17, 2004); *SHP MGMT Tunxis Ave., L.P.* v. *Blakeney*, Superior Court, judicial district of Hartford, Housing Session, Docket No. HDSP-127921, H1261 (August 9, 2004); *Hill* v. *Purdy*, Superior Court, judicial district of Litchfield, geographical area number eighteen at Bantam, Housing Session, Docket No. CV-188661 (December 4, 2002).

[10] See *Amresco Residential Corp.* v. *Jones*, Superior Court, judicial district of Hartford-New Britain at Hartford, Housing Session, Docket No. SPH-96230, H-1145 (March 26, 1998).

"Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . .

"Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Citations omitted; internal quotation marks omitted.) *Young* v. *Young*, 249 Conn. 482, 487–88, 733 A.2d 835 (1999).

Service of a valid notice to quit, which terminates the lease and creates a tenancy at sufferance;[11] *Bargain Mart, Inc.* v. *Lipkis*, 212 Conn. 120, 134, 561 A.2d 1365 (1989); "is a condition precedent to a summary process action" under § 47a-23 that implicates the trial court's subject matter jurisdiction over that action. *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5, 931 A.2d 837 (2007); id. ("defective" notice to quit deprives court of subject matter jurisdiction); see also, e.g., *Lampasona* v. *Jacobs*, 209 Conn. 724, 728–29, 553 A.2d 175 (same), cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989). Thus, the defendants' "motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss [is] de

[11] "A tenancy at sufferance arises when a person who came into possession of land rightfully continues in possession wrongfully after his right thereto has terminated." (Internal quotation marks omitted.) *O'Brien Properties, Inc.* v. *Rodriguez*, 215 Conn. 367, 372, 576 A.2d 469 (1990).

novo." (Internal quotation marks omitted.) *R.C. Equity Group, LLC* v. *Zoning Commission*, 285 Conn. 240, 248, 939 A.2d 1122 (2008).

Our analysis of the plaintiffs' claims begins with the Appellate Court's decision in *Housing Authority* v. *Hird*, supra, 13 Conn. App. 150. In *Hird*, a landlord initially had sought to evict a tenant for violating certain lease terms governing pets and apartment conditions. Id., 152–53. In July, 1985, the landlord served a notice to quit and then initiated a summary process action that was resolved on its merits in the tenant's favor on November 6, 1985. Id., 153. The landlord then served a second notice to quit on the tenant on November 15, 1985, alleging that the tenant had failed to pay rent for November, and thereafter instituted another summary process action. Id. The landlord withdrew the second summary process action on January 29, 1986, in response to the tenant's motion to dismiss alleging that the landlord had failed to comply with applicable federal regulations. Id. The landlord refused the efforts of the tenant to restore her tenancy, and filed a third notice to quit on January 31, 1986, alleging that the tenant had failed to pay rent for January, which was followed by a summary process action shortly thereafter. Id., 154.

The Appellate Court first concluded that the tenant was "a tenant at will" in January, 1986, because the judgment in her favor on the merits in the first summary process action "had 'revived' the original lease arrangement," thus obligating her to pay rent to the landlord.[12] Id., 155. The court further concluded that the lease also had survived the landlord's withdrawal of the second

---

[12] The Appellate Court noted that "[s]ervice of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease. The lease is neither voided nor rescinded until the landlord performs this act and, upon service of a notice to quit possession, a tenancy at will is converted to a tenancy at sufferance." *Housing Authority* v. *Hird*, supra, 13 Conn. App. 155; see also footnotes 17 and 18 of this opinion.

summary process action on January 29, 1986, because "[t]he right of [the landlord] to withdraw his action before a hearing on the merits, as allowed by [General Statutes] § 52-80,[13] is absolute and unconditional. Under our law, the effect of a withdrawal, so far as the pendency of the action is concerned, is strictly analogous to that presented after the rendition of a final judgment or the erasure of a case from the docket. . . . The withdrawal of the summary process action on January 29, 1986, effectively erased the court slate clean as though the eviction predicated on the November 15, 1985 notice to quit possession had never been commenced. *The [landlord] and the [tenant] were back to square one, and the continuation of their lease . . . was restored.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 157; see also *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 464–65, 948 A.2d 379 (concluding that revival of lease obligations at "square one" under *Hird* operates prospectively only and does not require "retroactive revival" of tenant's obligations under lease "because the landlord is compensated for assuming a tenant's obligations through use and occupancy payments"), cert. denied, 289 Conn. 906, 957 A.2d 873 (2008).

As noted previously, our trial courts are split on whether the withdrawal of a summary process action requires the landlord to serve another notice to quit

[13] General Statutes § 52-80 provides: "If the plaintiff, in any action returned to court and entered in the docket, does not, on or before the opening of the court on the second day thereof, appear by himself or attorney to prosecute such action, he shall be nonsuited, in which case the defendant, if he appears, shall recover costs from the plaintiff. The plaintiff may withdraw any action so returned to and entered in the docket of any court, before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action, or any other party thereto may withdraw any cross complaint or counterclaim filed therein by him, only by leave of court for cause shown."

prior to commencing a subsequent summary process action. See footnotes 9 and 10 of this opinion. Accordingly, in the present case, we must determine whether " 'square one' " under *Housing Authority* v. *Hird*, supra, 13 Conn. App. 157, means the state of affairs as they existed before the filing of the notice to quit, or instead, as they existed before the filing of the complaint in the summary process action. The parties' briefs do not provide us with any authority beyond the cited Connecticut trial court cases,[14] and our own independent research has not yielded a great deal of assistance, with the exception of a comprehensive body of case law on this topic from our neighboring state, New York.

In New York, as in Connecticut, service of a notice to quit is a jurisdictional prerequisite to a summary

[14] We acknowledge that then Judge Borden, in his dissenting opinion in *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, supra, 16 Conn. App. 587, appears to view " 'square one' " under *Housing Authority* v. *Hird*, supra, 13 Conn. App. 157, as the status quo preceding the filing of the summary process complaint, rather than the service of the notice to quit. Dissenting from the majority's conclusion that an invalid notice to quit was, in addition to not being a proper basis for a summary process action, also a failure to terminate the landlord-tenant relationship; *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, supra, 584; Justice Borden discussed *Hird* and noted that "the lease or tenancy under which the parties operated prior to service of the notice to quit will be revived by a judgment for the tenant in any subsequent summary process action alleging termination of the tenancy by service of that notice to quit . . . [or] *by withdrawal of any subsequent summary process action alleging termination of the tenancy by service of that notice to quit . . . by the landlord's communication to the tenant of the withdrawal of the previously served notice to quit*; or by any other act by which the landlord clearly acquiesces in the tenant's continued possession of the property." (Citations omitted; emphasis added.) Id., 595 n.5. Although Judge Borden appeared to contemplate the withdrawal of the complaint and the withdrawal of the notice to quit as two different acts, we do not view his comments in *Barbour-Daniel Electronics, Inc.*, as dispositive of the present appeal because this precise issue was not before the court in that case, and the basic premise of his dissent, namely, that an invalid notice to quit nevertheless may operate to terminate a lease, is inconsistent with this court's subsequent decision in *Bargain Mart, Inc.* v. *Lipkis*, supra, 212 Conn. 134. See also footnote 19 of this opinion.

process action. See, e.g., *Kaycee West 113th Street Corp.*
v. *Diakoff*, 160 App. Div. 2d 573, 554 N.Y.S.2d 216 (1990).
In the seminal case on this issue, the court concluded
that, once a summary process action had been dis-
missed, the applicable statute; N.Y. Real Prop. Law
§ 232-a (McKinney 2006);[15] "requires the tenant to be
informed of the landlord's intention by service of a new
notice. Without a new notice, any subsequent summary
proceeding must be dismissed." *Haberman* v. *Wager*,
73 Misc. 2d 732, 734, 342 N.Y.S.2d 405 (1973). In so
concluding, the court noted that the notice to quit has
two functions, namely, to "[end] the tenant's estate, and
[to inform] him of the consequence of his failure to
vacate. Because of the latter feature . . . the [l]egisla-
ture did not intend a . . . notice to be good forever."
Id., 733. The court also noted that, following the dis-
missal of the first summary process action, "the tenant
was entitled to a certain peace of mind. The landlord
had done what in the notice he had threatened to do.
He had lost. Perhaps now the landlord would lose inter-
est in evicting the tenant. Perhaps the landlord would
come to the tenant with an offer of compromise. Per-
haps the landlord would be unable to cure the technical
deficiencies which led to the dismissal of the first peti-
tion. All of these are things a tenant might reasonably
hope."[16] Id., 734; see also *Nicolaides* v. *Division of*

---

[15] Section 232-a of New York Real Property Law (McKinney 2006) provides:
"No monthly tenant, or tenant from month to month, shall hereafter be
removed from any lands or buildings in the city of New York on the grounds
of holding over his term unless at least thirty days before the expiration of
the term the landlord or his agent serve upon the tenant, in the same manner
in which a notice of petition in summary proceedings is now allowed to be
served by law, a notice in writing to the effect that the landlord elects to
terminate the tenancy and that unless the tenant removes from such premises
on the day on which his term expires the landlord will commence summary
proceedings under the statute to remove such tenant therefrom."

[16] The dissent attempts to distinguish this case law by arguing that these
cases involved dismissals of previously filed summary process actions, rather
than voluntary withdrawals of those actions. See *Nicolaides* v. *Division of
Housing & Community Renewal*, 231 App. Div. 2d 723, 724, 647 N.Y.S.2d
866 (1996); *Kaycee West 113th Street Corp.* v. *Diakoff*, supra, 160 App. Div.

*Housing & Community Renewal,* 231 App. Div. 2d 723, 724, 647 N.Y.S.2d 866 (1996) ("[i]t is well settled that a notice of nonrenewal of a rent stabilized lease does not survive the dismissal of the first holdover action and cannot serve as the predicate for a second proceeding in a new forum"); *Kaycee West 113th Street Corp.* v. *Diakoff,* supra, 573 ("Since the Civil Court action was dismissed, the [thirty day] notice upon which it was predicated cannot be revived to support a new action. . . . Before the landlord commenced the new action . . . service of a new [thirty day] notice was required." [Citations omitted.]).

Moreover, the New York courts have recognized the practical value of this bright line rule, even in cases wherein the time lapse between the two summary process actions is minimal, noting that "in matters procedural . . . a rule of certainty is preferable to deciding on an ad hoc basis in each case whether the lapse between the two proceedings is reasonable or unreasonable." *Fromme* v. *Simsarian,* 121 Misc. 2d 792, 794, 468 N.Y.S.2d 990 (1983); see also *Colavolpe* v. *Williams,*

2d 573; *Haberman* v. *Wager,* supra, 73 Misc. 2d 734. We disagree, because under the case law applying § 52-80, the statute that governs withdrawals of civil actions, the dissent points to a distinction without a difference. See *Sicaras* v. *Hartford,* 44 Conn. App. 771, 775, 692 A.2d 1290 ("[w]ithdrawals are analogous to final judgments"), cert. denied, 241 Conn. 916, 696 A.2d 340 (1997); see also *Lusas* v. *St. Patrick's Roman Catholic Church Corp.,* 123 Conn. 166, 170, 193 A. 204 (1937) ("[t]he situation as regards the jurisdiction of the court to proceed further in the matter after an action has been voluntarily withdrawn is strictly analogous to that presented after the rendition of a final judgment or the erasure of a case from the docket"); *Housing Authority* v. *Hird,* supra, 13 Conn. App. 157 (same).

Thus, we also disagree with the dissent's attempt to distinguish *Housing Authority* v. *Hird,* supra, 13 Conn. App. 150, on the ground that the withdrawal of the second summary process action therein "may not have been a fully voluntary withdrawal, but, instead, the recognition of a procedural defect in the second notice to quit" that would have permitted the tenant to file a successful motion to dismiss. Given the effect of a withdrawal under § 52-80, in our view, the reasons motivating the landlord's withdrawal in *Hird* simply do not matter.

77 Misc. 2d 430, 431, 354 N.Y.S.2d 309 (1974) ("Without a new [thirty day] notice, a subsequent summary proceeding must fail. It was not intended that the [thirty day] notice could hang like the sword of Damocles over the head of the tenant, to be used at some future date, at the whim of the landlord. Indeed, the tenant is entitled to know that the prior action was in all respects terminated . . . .").

The plaintiffs claim that not requiring the service of a new notice to quit promotes judicial economy in summary process proceedings, particularly when the first notice to quit was valid. Indeed, they note that they promptly informed the defendants that the notice to quit was not being withdrawn, and that the action would be refiled, as the plaintiffs had no desire to revive the lease. Thus, the plaintiffs argue that they have performed the requisite "unequivocal act which clearly demonstrates [the landlord's] intent to terminate the lease";[17] *Sandrew* v. *Pequot Drug, Inc.*, 4 Conn. App. 627, 631, 495 A.2d 1127 (1985); and that it would frustrate judicial economy to require service of a new notice to quit prior to the commencement of a subsequent summary process action. Assuming that the underlying

---

[17] "It is well settled that breach of a covenant to pay rent does not automatically result in the termination of a lease . . . rather, it gives the lessor a right to terminate the lease which he may or may not exercise. . . . In order to effect a termination, the lessor must perform some unequivocal act which clearly demonstrates his intent to terminate the lease." (Citations omitted.) *Sandrew* v. *Pequot Drug, Inc.*, 4 Conn. App. 627, 630–31, 495 A.2d 1127 (1985). Although the Appellate Court has stated that "there is almost no limit to the possible words or deeds which might constitute the unequivocal act necessary to terminate the lease," that court also has noted that such latitude is applicable only in situations wherein "a lessor might wish to terminate a lease but not wish to institute a summary process action," such as where the tenant has already moved away from the premises. Id., 631. Thus, a statement terminating a lease may serve as the condition precedent to a summary process action only if it "substantially compl[ies] with the format or substance of a statutory notice to quit" set forth by § 47a-23. Id., 632.

notice to quit was valid;[18] see footnote 8 of this opinion; we acknowledge that the plaintiffs' argument has some appeal on the discrete facts of this particular case, which involve a very short time line between actions and commercial parties represented by counsel. Guided, however, by the principles behind the New York case law, we agree with the defendants' contention that not requiring the service of a new notice to quit as a per se rule could well complicate the status of the parties' relationship after the withdrawal of the initial complaint, and would require more extensive determinations by the trial court concerning the parties' intentions and whether postwithdrawal payments are for rent, or use and occupancy. Moreover, notwithstanding the dissent's arguments to the contrary, the per se rule advocated by the defendants is not likely to be particularly costly or otherwise inefficient, as landlords can either amend the defects in their complaints, or simply serve a new notice to quit after withdrawal and prior to refiling, a process that could add only three days of delay prior to the institution of the subsequent summary process action. See General Statutes §§ 47a-23 (a) and

[18] "[A]fter a notice to quit possession has been served, a tenant's fixed tenancy is converted into a tenancy at sufferance. . . . A tenant at sufferance is released from his obligations under a lease. . . . His only obligations are to pay the reasonable rental value of the property which he occupied in the form of use and occupancy payments . . . and to fulfill all statutory obligations." (Citations omitted.) *Sproviero* v. *J.M. Scott Associates, Inc.*, supra, 108 Conn. App. 462–63; id., 463 (noting that tenants were relieved from lease obligation to maintain septic system during pendency of litigation after service of notice to quit). A legally invalid notice to quit is, however, considered "equivocal" because of that legal defect and, therefore, does not operate to terminate a lease. See *Bargain Mart, Inc.* v. *Lipkis*, supra, 212 Conn. 134 ("[i]t is self-evident that if the notice [to quit] is invalid, then the legal consequence of 'termination' arising from the service of a valid notice [to quit] does not result"); see also id., 135 ("[b]ecause the trial court in the summary process action did not determine whether the notices to quit were valid, we have no basis for concluding that those notices terminated the . . . lease"); *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, supra, 16 Conn. App. 582–83 (statutory notice to quit invalid because of untimely service did not terminate month-to-month tenancy and cannot serve as basis for summary process action, thus requiring service of second notice to quit).

47a-23a (a). Accordingly, we conclude that, after withdrawing its initial summary process action, the plaintiffs, as landlords, were required to serve a new notice to quit prior to commencing a new summary process action.[19] Because they failed to do so, the trial court properly determined that it lacked subject matter jurisdiction and dismissed this summary process action.[20]

The judgment is affirmed.

In this opinion ROGERS, C. J., and ZARELLA, J., concurred.

---

[19] We disagree with the dissent's characterization of our conclusion as an "[implicit] overrul[ing] [of] . . . our substantial body of case law that establishes that a valid notice to quit terminates the lease," and renders the tenancy one at sufferance, particularly given that a "valid notice to quit already had been served on the defendants [that] terminated the lease between the parties . . . ." We part company from the dissent in large part on the basis of its apparent analytical predicate that the first notice to quit in this case was *presumptively* valid. See also footnote 8 of this opinion. The dissent does not point to any case law or statute establishing the presumptive validity of such notices, and this court's decision in *Bargain Mart, Inc.* v. *Lipkis*, supra, 212 Conn. 134, appears to stand for the contrary proposition, as we stated therein that "[t]he defendants' argument *erroneously equates an unequivocal notice of intent to terminate a lease with a termination of the lease.* As the Appellate Court correctly observed in *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, [supra, 16 Conn. App. 582–84] . . . a notice to quit will not terminate a lease if the notice itself is invalid. Indeed, it is self-evident that if the notice is invalid, then the legal consequence of 'termination' arising from the service of a valid notice does not result." (Emphasis added.) Moreover, in *Bargain Mart, Inc.* v. *Lipkis*, supra, 136, we rejected the argument "that, under [*Housing Authority* v. *Hird*, supra, 13 Conn. App. 155], there would be no reason for a judgment in favor of the tenant in a summary process action to 'revive' the lease if the lease had not been terminated by the notice to quit," observing that the validity of the notices to quit in *Bargain Mart, Inc.*, were in dispute, and the "logical predicate to the *Hird* court's 'revival' analysis—the existence of a valid notice to quit or, where the validity of the notice is in dispute, a finding of validity—was absent in [this] . . . summary process action." Because there was no judicial determination of the validity of the notice to quit utilized by the plaintiffs in the first summary process action in the present case, our conclusion does not disturb the well established body of case law holding that a valid notice to quit terminates the lease.

[20] We need not, therefore, reach the plaintiffs' claims with respect to the trial court's determination regarding the propriety of the notice to quit in this case. But see footnote 8 of this opinion.

VERTEFEUILLE, J., with whom PALMER, J., joins, dissenting. I respectfully disagree with the majority's conclusion that the withdrawal by the plaintiffs, Waterbury Twin, LLC, and 150 MH, LLC, of their summary process action against the defendants, Renal Treatment Centers–Northeast, Inc., and Davita, Inc., revived the written lease between the parties and required the plaintiffs to serve a new notice to quit pursuant to General Statutes § 47a-23 prior to filing a new summary process action against the defendants. After a careful review of our prior cases, I conclude that the majority ignores, or perhaps implicitly overrules, our substantial body of case law that establishes that a valid notice to quit terminates the lease. An additional notice to quit therefore is unnecessary. In addition, I find that the majority's reliance on New York case law for its conclusion is misplaced.

"The Superior Court has jurisdiction to hear a summary process action only if the landlord has previously served the tenant with a notice to quit." (Internal quotation marks omitted.) *Housing Authority* v. *Harris*, 225 Conn. 600, 605, 625 A.2d 816 (1993); *Lampasona* v. *Jacobs*, 209 Conn. 724, 729, 553 A.2d 175, cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989) ("[a]s a condition precedent to a summary process action, proper notice to quit is a jurisdictional necessity"). It is well established that "[t]he issuance by a landlord of a notice to quit is an unequivocal act terminating the lease agreement with the tenant. Termination of the lease does not terminate the tenancy since, upon service of a notice to quit, a tenancy at sufferance is created. . . . After a notice to quit has been served . . . a tenant at sufferance no longer has a duty to pay rent. He still, however, is obliged to pay a fair rental value in the form of use and occupancy for the dwelling

unit." (Citations omitted; internal quotation marks omitted.) *O'Brien Properties, Inc.* v. *Rodriguez,* 215 Conn. 367, 372, 576 A.2d 469 (1990).

The courts of this state have long concluded that a valid notice to quit terminates a lease. Indeed, a review of case law from these courts reveals that this principle has been recognized in this state as far back as the early part of twentieth century and has been applied consistently ever since. See *Thompson* v. *Coe,* 96 Conn. 644, 651, 115 A. 219 (1921) ("[w]e think the service of the notice to quit was a definite, unequivocal act of the lessor showing the exercise of her option to terminate, and that it took effect on . . . the date the notice was served"); *Tseka* v. *Scher,* 135 Conn. 400, 404, 65 A.2d 169 (1949) ("the lessor can terminate the lease under these circumstances only by a re-entry or other unequivocal act, such as a notice to quit"); *Borst* v *Ruff,* 137 Conn. 359, 361, 77 A.2d 343 (1950) ("[b]y serving the notice to quit . . . the landlord performed an act which was sufficiently unequivocal to terminate the tenancy"); *Kligerman* v. *Robinson,* 140 Conn. 219, 222, 99 A.2d 186 (1953) ("While the tenant's nonpayment of rent did not automatically terminate the lease, his failure to make a tender for [two] months . . . entitled the landlord to end the tenancy by some unequivocal act. . . . That act, in the instant case, was the service of the notice to quit." [Citation omitted.]); *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 156, 176 A.2d 574 (1961) ("[t]he service of the notice to quit . . . [is] the landlord's first unequivocal act notifying the tenant of the termination of the lease"); *Danpar Associates* v. *Falkha,* 37 Conn. Sup. 820, 824, 438 A.2d 1209 (1981) ("Some unequivocal act by the plaintiff showing that it had exercised its option to terminate was necessary. . . . Service of the notice to quit . . . would constitute such an act." [Citation omitted.]); *Bushnell Plaza Development Corp.* v. *Fazzano,* 38

Conn. Sup. 683, 686, 460 A.2d 1311 (1983) ("[t]he notice to quit constituted an unequivocal offer to terminate the monthly rental . . . [and] [u]pon its service, the tenancy at will was converted to a tenancy at sufferance"); *Rivera* v. *Santiago*, 4 Conn. App. 608, 610, 495 A.2d 1122 (1985) ("[t]he issuance by a landlord of a notice to quit is an unequivocal act terminating the lease agreement with the tenant"); *Tehrani* v. *Century Medical Center*, 7 Conn. App. 301, 305, 508 A.2d 814 (1986) ("[t]he service of the notice to quit possession . . . was the [landlords'] first unequivocal act notifying the [tenant] of the termination of the lease for nonpayment of . . . rent"); *Housing Authority* v. *Hird*, 13 Conn. App. 150, 155, 535 A.2d 377 ("Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease. The lease is neither voided nor rescinded until the landlord performs this act and, upon service of a notice to quit possession, a tenancy at will is converted to a tenancy at sufferance. . . . It is necessary to prove the allegations of the notice to quit possession in order to obtain a judgment for possession." [Citations omitted.]), cert. denied, 209 Conn. 825, 552 A.2d 433 (1988); *O'Brien Properties, Inc.* v. *Rodriguez*, supra, 215 Conn. 372 ("[t]he issuance by a landlord of a notice to quit is an unequivocal act terminating the lease agreement with the tenant" [internal quotation marks omitted]); *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 458 n.2, 948 A.2d 379 ("[s]ervice of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease"), cert. denied, 289 Conn. 906, 957 A.2d 873 (2008); see also P. Marzinotto, Connecticut Summary Process Manual (1986) p. 31 ("[t]he notice to quit is the basis for the inauguration of a summary process action and constitutes an unequivocal act terminating the lease").

Our courts also have concluded, consistently with this authority, that an invalid notice to quit does not

terminate the lease. "[A] notice to quit will not terminate a lease if the notice itself is invalid. Indeed, it is self-evident that if the notice is invalid, then the legal consequence of 'termination' arising from the service of a valid notice does not result." *Bargain Mart, Inc.* v. *Lipkis*, 212 Conn. 120, 134, 561 A.2d 1365 (1989); see also *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, 16 Conn. App. 574, 582–84, 548 A.2d 744 (concluding notice to quit invalid and "[w]hen the notice to quit has no effect, it cannot terminate a lease"), cert. denied, 209 Conn. 826, 552 A.2d 432 (1988).

In the present case, the majority requires that the plaintiffs serve a new notice to quit prior to bringing a new summary process action despite the presumed validity of the first notice to quit.[1] I disagree. The majority's conclusion is, at the very least, inconsistent with our long-standing, well established body of case law holding that a valid notice to quit terminates the lease.[2]

---

[1] The majority states in footnote 8 of its opinion that it need not address whether the first notice to quit served by the plaintiffs is valid as a result of its conclusion that the trial court lacked subject matter jurisdiction over the summary process action because of the plaintiffs' failure to serve a second notice to quit. Like the majority, I assume, for purposes of addressing the plaintiffs' first claim, that the first notice to quit served by the plaintiffs is valid.

[2] Although the majority concludes that it is not necessary to reach the plaintiffs' claim regarding the validity of the notice to quit and notes that this court has "upheld as valid a nearly identical notice to quit"; see footnote 8 of the majority opinion; the majority nevertheless asserts that we can not presume the notice to quit is valid and, therefore, its conclusion does not implicitly overrule our substantial body of case law that establishes that a valid notice to quit terminates the lease because there has been no judicial determination that the notice to quit served by the landlord is valid. I disagree.

The majority relies on *Bargain Mart, Inc.* v. *Lipkis*, 212 Conn. 120, 134, 561 A.2d 1365 (1989), in support of its position that we can not presume that the notice to quit in the present case was valid in the absence of a judicial determination of its validity. I find *Bargain Mart, Inc.*, to be inapposite. In that case, the landlord had served notices to quit on the tenant and then had instituted a summary process action. Id., 122. The tenant had challenged the summary process action, asserting several special defenses including that the notices to quit served on him were invalid. Id., 122–23. The parties

Moreover, given that a valid notice to quit already had been served on the defendants and it terminated the lease between the parties, service of an additional notice to quit is unnecessary, duplicative and contrary to the very purpose of summary process, which is to provide an expeditious remedy for a landlord seeking to obtain possession of leased premises. *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5–6, 931 A.2d 837 (2007).

The majority also relies for its conclusion on case law from New York state. I disagree, however, with the majority's determination that New York case law supports a conclusion that the plaintiffs in the present case were required to serve a second notice to quit

eventually settled that summary process action by a stipulated judgment, which did not specifically address the validity of the notice to quit. Id., 123. In a subsequent related action, the landlord attempted to assert that the notices to quit served on the tenant in relation to the prior action terminated the lease. Id., 125. Recognizing that the summary process action had been settled by a stipulated judgment and that "[s]uch a judgment represents 'a settlement of the controversy by the parties thereto [thus creating the presumption] that the parties intended to settle all aspects of the controversy, including all issues raised by the papers comprising the record,' " this court concluded that it had "no basis for concluding that [the initial notices to quit] terminated the [tenant's] lease." Id., 135. This court's conclusion in *Bargain Mart, Inc.*, was clearly based on its conclusion as to which issues were resolved in the stipulated judgment and was designed to give effect to that stipulated judgment. Nothing in *Bargain Mart, Inc.*, prohibits this court from assuming that the notice to quit served in the present case was valid for purposes of deciding whether the plaintiffs were required to serve another notice to quit on the defendants prior to bringing a second summary process action.

Moreover, the logical consequence of the majority's conclusion is that no notice to quit can have any legal effect until a court has made a judicial determination that such notice is valid. In other words, if a landlord serves a notice to quit on its tenant, the tenant will not have to consider its lease terminated until the tenant challenges the validity of the notice to quit and receives a judicial determination that the notice to quit was valid. Indeed, the position taken by the majority flies in the face of the public policy that the majority seeks to promote, namely, establishing bright line rules in this area so that landlords and tenants will understand their respective positions more clearly.

prior to instituting a second summary process action. The cases relied on by the majority can be readily distinguished from the facts of the present case. In *Nicolaides* v. *State Division of Housing & Community Renewal*, 231 App. Div. 2d 723, 724, 647 N.Y.S.2d 866 (1996), *Kaycee West 113th Street Corp.* v. *Diakoff*, 160 App. Div. 2d 573, 554 N.Y.S.2d 216 (1990), and *Haberman* v. *Wager*, 73 Misc. 2d 732, 734, 342 N.Y.S.2d 405 (1973), the New York courts held, in brief opinions with little reasoning, that, after an initial summary process action instituted by a landlord had been *dismissed* by the trial court, the landlord was required to serve another notice to quit prior to instituting a second summary process action. These cases are clearly inapposite to the present case, where the plaintiffs *voluntarily withdrew* the initial summary process action, and the trial court took no action.[3]

Finally, I address *Housing Authority* v. *Hird*, supra, 13 Conn. App. 150, on which the defendants in the present action rely. In *Hird*, a residential landlord

---

[3] The majority asserts that there is no reason to distinguish between a case in which a landlord has withdrawn a summary process action and one in which the summary process action has been dismissed on the merits. To support this conclusion, in footnote 16 of its opinion, the majority cites cases in which the Appellate Court and this court have concluded that withdrawals and final judgments are analogous for purposes of whether a court retains jurisdiction over a particular matter. See *Sicaras* v. *Hartford*, 44 Conn. App. 771, 775, 692 A.2d 1290 ("[w]ithdrawals are analogous to final judgments"), cert. denied, 241 Conn. 916, 696 A.2d 340 (1997); see also *Lusas* v. *St. Patrick's Roman Catholic Church Corp.*, 123 Conn. 166, 170, 193 A. 204 (1937) ("[t]he situation as regards the jurisdiction of the court to proceed further in the matter after an action has been voluntarily withdrawn is strictly analogous to that presented after the rendition of a final judgment or the erasure of a case from the docket"). I disagree. *Sicaras* and *Lusas* were civil cases, not summary process cases. Although there may be no distinction between a voluntary withdrawal and dismissal on the merits for purposes of whether the court retains jurisdiction over a civil case, these cases provide no guidance as to whether a notice to quit served by a party continues to have legal effect after the voluntary withdrawal of a subsequent summary process action.

served an initial notice to quit on its tenant on July 15, 1985, alleging that the tenant "had violated the lease by maintaining the premises in an unsanitary condition and by keeping pets on the premises." Id., 153. The notice contained the following language: "All payments made by you, on or after the date of this notice, shall be accepted as [u]se and [o]ccupancy [o]nly without prejudice to the [landlord's] right to evict you." (Internal quotation marks omitted.) Id. The landlord then initiated a summary process action against the tenant, which ultimately resulted in a *judgment* for the tenant on November 6, 1985. Id. Thereafter, the landlord served a second notice to quit on the tenant on November 15, 1985, alleging that the tenant had failed to pay that month's rent. The landlord then initiated a second summary process action against the tenant, which the tenant sought to dismiss, claiming that the landlord had failed to comply with the federal regulations applicable to the apartment where the tenant resided. Id. In response to the tenant's motion to dismiss, the landlord voluntarily withdrew the second summary process action on January 29, 1986. Id. On January 31, 1986, the tenant was served with a third notice to quit possession, alleging nonpayment of rent for the month of January, 1986. Id., 154. In defense, the tenant asserted that no lease was in effect in January, 1986, because the second notice to quit had terminated the parties' lease in November, 1985, and therefore, she could not be evicted for nonpayment of rent for that month since only use and occupancy payments were due. Id. The trial court rejected the tenant's claim, determining that the tenant "was then occupying her apartment . . . as a tenant at will" in January, 1986. (Internal quotation marks omitted.) Id. The tenant appealed, claiming that the trial court improperly concluded that a rental agreement existed between the parties in January, 1986, because the first summary process action that resulted in a judg-

ment for the tenant and the second notice to quit operated to terminate the tenant's lease. Id., 154–55.

The Appellate Court affirmed the judgment of the trial court. In doing so, the Appellate Court concluded that "[t]he service of the notice to quit possession on July 15, 1985, did not compromise the [rights of the tenant] because the subsequent trial and judgment on the merits in the summary process action predicated on this notice did not uphold the allegations of the complaint asserting the termination of the lease by this notice to quit possession. The trial court, therefore, correctly concluded that the [tenant's] lease survived the judgment of November 6, 1985, in her favor. The parties were returned to their status quo before July 15, 1985, by this judgment." Id., 156.

The Appellate Court further concluded, however, that "the [tenant's] lease also survived [the second] summary process action because of its withdrawal by the [landlord] before a hearing and judgment thereon. . . . The withdrawal of the summary process action on January 29, 1986, effectively erased the court slate clean as though the eviction predicated on the November 15, 1985 notice to quit possession had never been commenced. The [landlord] and the [tenant] were 'back to square one,' and *the continuation of their lease of January 9, 1981, was restored.*" (Citations omitted; emphasis added.) Id., 156–57.

I would conclude that *Hird* does not support the majority's conclusion in the present case. The landlord in *Hird* withdrew the second summary process action in response to the tenant's motion to dismiss, which claimed that the second notice to quit was defective for failing to comply with applicable federal regulations. Id., 156. Thus, it appears that the second notice to quit was of questionable validity and the landlord's withdrawal of the second summary process action in *Hird*

may not have been a fully voluntary withdrawal, but, instead, the recognition of a procedural defect in the second notice to quit. To the extent that *Hird* seems to indicate that a notice to quit is vitiated by the landlord's voluntary withdrawal of a summary process action, therefore, I would limit the application of *Hird* to the facts of that case. This interpretation of *Hird* is consistent with our cases, previously cited herein, that have held that an invalid notice to quit does not terminate the lease.

I therefore respectfully dissent.