******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOWN OF CANTON *v.* CADLE PROPERTIES
OF CONNECTICUT, INC.
(SC 19225)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Vertefeuille, Js.

Argued January 6—officially released May 19, 2015

*Daniel J. Krisch*, with whom was *Kenneth R. Slater, Jr.*, for the appellant (plaintiff).

*Eric H. Rothauser*, with whom were *Jay B. Weintraub* and, on the brief, *John L. Bonee III*, for the appellee (intervening defendant).

*Opinion*

McDONALD, J. This certified appeal requires us to consider whether General Statutes § 12-163a, under which a court may appoint a receiver of rents when real property taxes due to a municipality are delinquent, authorizes the receiver to: (1) evict a tenant from the property in the event of a default; (2) lease the property to a new tenant; and (3) use legal process to collect back rent allegedly due. The Appellate Court concluded that none of these acts falls within the scope of a receiver's authority under the statute. See *Canton* v. *Cadle Properties of Connecticut, Inc.*, 145 Conn. App. 438, 450–58, 77 A.3d 144 (2013). We conclude that § 12-163a does authorize a receiver to use legal process to collect rent due prior to the date of the receiver's appointment, but we agree with the Appellate Court's conclusions in all other respects. Accordingly, we affirm in part and reverse in part the Appellate Court's judgment, which had reversed in part the judgment of the trial court insofar as that court had modified the receivership orders to confer authority to undertake the three aforementioned actions.

The record reveals the following undisputed facts and procedural history. The defendant, Cadle Properties of Connecticut, Inc. (Cadle), is the owner of real property in Canton (property).[1] After Cadle effectively abandoned the property, which is allegedly environmentally contaminated, the plaintiff, the town of Canton (town), filed a petition seeking the appointment of a receiver of rents pursuant to § 12-163a. The petition alleged that Cadle had failed to pay real property taxes due to the town in the amount of $362,788.59, plus interest and lien penalties, for a total amount due of $884,263.04. The petition further alleged that, during all relevant periods, the property was occupied by a Volkswagen dealership owned by M & S Associates, LLC (tenant), which had a legal obligation to pay rent to Cadle.[2] The court, having found that Cadle owed the town taxes in the amount of $358,220.04, granted the petition to appoint the receiver, and issued orders authorizing the receiver to collect all rents or use and occupancy payments due with respect to the property.

After the receiver served the tenant with a notice to quit possession of the property on the ground of nonpayment of rent, the tenant filed a motion to intervene in the town's action against Cadle in order to challenge the receiver's authority to take legal action against it. Shortly thereafter, the receiver filed a motion to modify the receivership order to authorize it to pursue an eviction of the tenant in the event of nonpayment of rent, to lease the property to a new tenant, and to use all legal process to collect back rent. Prior to acting on the tenant's pending motion to intervene, the court granted the receiver's motion to modify without objection.

Subsequently, the trial court granted the tenant's motion to intervene in the action. The tenant then filed a motion to remove the receiver, asserting, inter alia, that the receiver had exceeded its authority under § 12-163a by serving it with a notice to quit and by bringing an action to collect back taxes and prior rents. The court denied the motion for removal, reasoning that, because the receiver acts in the owner's stead, it would not be constrained from collecting back rent or evicting a nonpaying tenant through legal process. The court noted, however, that its order did not authorize the receiver to collect any back taxes owed by the tenant.[3]

On appeal to the Appellate Court, the tenant claimed, inter alia, that the trial court improperly had denied its motion to remove the receiver because the court exceeded its authority under § 12-163a when it modified its order to allow the receiver to evict the tenant, to secure a new tenant, and to bring an action against the tenant for all rents due, including back rents allegedly owed. Id., 450. The Appellate Court agreed. That court concluded that the receiver's responsibilities are prescribed in § 12-163a and cannot be expanded by the trial court. Id., 454. Those duties, according to the Appellate Court, are limited to collecting rents that in turn are to be used to pay taxes and utilities due after the date of the receiver's appointment. Id., 455–58. Although the Appellate Court concluded that the statute was ambiguous as to the receiver's authority to collect back rent, it reasoned that a construction limiting the collection of rent to that which is due after the receiver's appointment was more harmonious with the receiver's authority to pay only those taxes and utilities due after the date of the receiver's appointment. Id., 457–58. Accordingly, the Appellate Court reversed the trial court's judgment insofar as it had granted the receiver's motion to modify the receivership orders, but it affirmed the judgment insofar as it had denied the tenant's motion to remove the receiver. Id., 458. The town's certified appeal to this court followed. See *Canton* v. *Cadle Properties of Connecticut, Inc.*, 310 Conn. 941, 79 A.3d 893 (2013).

The scope of a receiver's authority under § 12-163a is a question of statutory construction subject to plenary review and well established principles. See General Statutes § 1-2z (setting forth plain meaning rule); *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 742, 865 A.2d 428 (2005) ("[w]hen a statute is not plain and unambiguous, we also seek interpretive guidance from the legislative history of the statute and the circumstances surrounding its enactment, the legislative policy it was designed to implement, the statute's relationship to existing legislation and common-law principles governing the same general subject matter").

Section 12-163a (a) sets forth the circumstances under which a municipality may seek the appointment

of a receiver of rents and the authority vested in the receiver upon such appointment. That subsection provides in relevant part: "Any municipality may petition the Superior Court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy for any property for which the owner, agent, lessor or manager is delinquent in the payment of real property taxes. . . . The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner, agent, lessor or manager. The receiver shall make payments from such rents or payments for use and occupancy, first for taxes due on and after the date of his appointment and then for electric, gas, telephone, water or heating oil supplied on and after such date. The owner, agent, lessor or manager shall be liable for such reasonable fees and costs determined by the court to be due the receiver, which fees and costs may be recovered from the rents or payments for use and occupancy under the control of the receiver, provided no such fees or costs shall be recovered until after payment for current taxes, electric, gas, telephone and water service and heating oil deliveries has been made. The owner, agent, lessor or manager shall be liable to the petitioner for reasonable attorney's fees and costs incurred by the petitioner, provided no such fees or costs shall be recovered until after payment for current taxes, electric, gas, telephone and water service and heating oil deliveries has been made and after payments of reasonable fees and costs to the receiver. Any moneys remaining thereafter shall be used to pay the delinquent real property taxes . . . ." General Statutes § 12-163a (a).

We begin with the principal dispute in this appeal, namely, whether the Appellate Court properly determined that the receiver may not collect back rent due, but only rent that is due after the receiver's appointment. The crucial sentence in § 12-163a (a) provides: "The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner, agent, lessor or manager." We agree with the Appellate Court that this sentence is ambiguous, especially as to the meaning of the term "forthcoming." See *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 145 Conn. App. 455. Nonetheless, we are persuaded that the more logical and compelling construction is the broader reading of the statute.

We put considerable weight on the fact that the statute refers to "all rents," rather than simply "rent." See General Statutes § 12-163a (a). The words "all" and "rents" (plural), individually and collectively, support the broadest possible reading. Indeed, it is difficult to ascribe any other logical meaning to the phrase "all rents" and still give full effect to both terms. "All" does not modify "occupants." Therefore, we cannot reason-

ably construe it to mean the collection of rent from every occupant. Rather, the term all rents suggests multiple kinds or sources (type or temporal) of rent. The fact that the receiver is to collect all rents "in place of the owner," who undoubtedly would be entitled to collect past and presently due rent, lends further support to the broader construction. See General Statutes § 12-163a (a). Although the term "forthcoming" does not clearly convey past and presently due, at least one of the various definitions of that term would be consistent with that meaning. See, e.g., The American Heritage Dictionary of the English Language (3d Ed. 1992) (defining forthcoming as "[a]vailable when required or as promised"); Random House Unabridged Dictionary (2d Ed. 1993) (defining forthcoming as "ready or available when required or expected").

We are mindful of the fact that, in other receivership schemes referenced in § 12-163a, the legislature used terms that more plainly include past due rent. See General Statutes § 12-163a (e) (requiring receivership proceedings initiated pursuant to General Statutes §§ 47a-14a to 47a-14h or pursuant to General Statutes §§ 47a-56 to 47a-56i to take priority over receivership established under § 12-163a); General Statutes § 47a-14d (b) (1) (providing for "the rents due on the date of entry of such judgment and rents to become due subsequent thereto from all occupying such property [to] be deposited with a receiver"); General Statutes § 47a-56d (c) ("[t]he receiver shall collect the accrued and accruing rents"). Nonetheless, we are persuaded that the use of the term "all rents" effectively conveys the same substance. To the extent that this phrase is ambiguous, we note that the sponsor of the bill enacted as § 12-163a referred to the bill as applying to back rent. See Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 1, 1995 Sess., p. 50, remarks of Representative Robert D. Godfrey; see also Public Acts 1995, No. 95-353, § 1.

Finally, we observe that § 12-163a (a) authorizes the receiver to collect rents "in place of the owner," without indicating or limiting the means by which the receiver may do so. As such, it seems reasonable to infer that the statute authorizes the receiver to use the legal means that otherwise would have been available to the owner to collect such unpaid obligations.[4]

To the extent that the Appellate Court assumed that reading § 12-163a as limiting the receiver's authority to the collection of rent due subsequent to its appointment would be more consistent with other authority conferred on the receiver, the predicate for its conclusion was flawed. Specifically, the Appellate Court determined that the statute authorizes the receiver to pay only those tax and utility bills that are due on or after the date of the receiver's appointment. See *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 145 Conn.

App. 457–58. It therefore reasoned that imposing a similar temporal limit on the receiver's collection of rent was the most harmonious construction. Id. The Appellate Court appears to have overlooked the fact that § 12-163a (a) sets forth an order of priority of payment, under which payment is made: "*first* for taxes due on and after the date of [the receiver's] appointment and then for electric, gas, telephone, water or heating oil supplied on and after such date"; next, for the fees and costs of the receiver and the petitioner's attorney; and finally, that "[*a*]*ny moneys remaining thereafter shall be used to pay the delinquent real property taxes* . . . ." (Emphasis added.) General Statutes § 12-163a (a); cf. *Southern Connecticut Gas Co.* v. *Housing Authority*, 191 Conn. 514, 527, 468 A.2d 574 (1983) (citing similar language in General Statutes § 16-262f as setting "statutory priority which allocates collected rentals to arrearages only after current charges, receivership fees, and attorney's fees have first been paid"). Thus, because the receiver may use rents collected to pay taxes that became delinquent before its appointment, our obligation to harmonize the various terms of a statute to achieve a consistent outcome; see *Stewart* v. *Watertown*, 303 Conn. 699, 711, 38 A.3d 72 (2012); does not counsel in favor of a construction limiting the receiver's authority to the collection of rent due on or after the receiver's appointment.

Having determined that the receiver may collect past due rent, we turn to the question of whether § 12-163a confers additional authority on the receiver to evict a defaulting tenant and to lease the premises to a new tenant. A review of the statute reveals that the only authority expressly conferred on the receiver is to undertake the following actions: (1) collect funds; and (2) make payments. There is no authority to evict a tenant or to enter into a new lease. Although § 12-163a (a) authorizes the receiver to collect use and occupancy payments, which arise after a notice to quit has been served on a tenant; see *Waterbury Twin, LLC* v. *Renal Treatment Centers–Northeast, Inc.*, 292 Conn. 459, 473 n.18, 974 A.2d 626 (2009);[5] the statute does not authorize the receiver to cause such a notice to be served (or reference chapter 830 of the General Statutes addressing landlord remedies), to take possession of the property, or to undertake any other action in the owner's stead with respect to the property except collecting payment from the building's occupants. Indeed, the authority conferred under § 12-163a is quite narrow in comparison to some other receivership statutes. Cf. General Statutes § 42-110f (receiver shall have power to take property into his possession and to sell, convey and assign same); General Statutes § 52-505 (receiver shall be vested with property to manage and use for benefit and support of members of certain associations, communities or corporations); General Statutes § 52-509 (receiver to hold business and all property, real

and personal, belonging to partnership); *Connecticut Light & Power Co.* v. *DaSilva*, 231 Conn. 441, 446, 650 A.2d 551 (1994) (noting with respect to § 16-262f, on which § 12-163a is modeled,[6] that "wide-ranging equitable and discretionary principles that govern rent receiverships in ordinary mortgage foreclosure proceedings" do not apply).

Moreover, because there is no indication in § 12-163a that the legislature has conferred the extraordinary authority on the receiver to enter into a contract with a new tenant that would bind the owner of the property,[7] it would make no sense to construe the reference to use and occupancy payments as implicitly authorizing the receiver to evict the tenant. It is only when both actions may be taken that the receiver would be able to collect payments. That authority must rest with the owner, who has every incentive in the usual case to evict and replace a defaulting tenant in order to remedy the deficiency and regain access to the rental income. Therefore, the authority to collect use and occupancy payments, reasonably construed, simply ensures that, if a lease has expired or an owner has served a notice to quit on a tenant, either before or after the receiver's appointment, the receiver may collect payments for use and occupancy, just as it may collect rent payments. Thus, the text of the statute weighs heavily against a construction permitting a receiver appointed under § 12-163a to evict a defaulting tenant and to lease the premises to a new tenant.

To the extent that the reference to use and occupancy payments gives rise to any ambiguity as to the receiver's authority to evict a defaulting tenant, we find no persuasive evidence in the legislative history that the legislature intended to confer such authority. That history makes clear that the legislature intended to provide a less drastic, expensive and time-consuming mechanism than foreclosure to recover delinquent taxes, as it already had afforded to utility companies to collect delinquent utility payments. See Conn. Joint Standing Committee Hearings, supra, pp. 50–51, 53, remarks of Representative Godfrey; id., pp. 124–26, remarks of Eric Gottschalk, corporation counsel for the city of Danbury. The only authority referenced in that history vis-á-vis the property is the collection of rent. See id., pp. 50–51, 124–26.

Because we conclude that the receiver is authorized to use legal process to collect past due rent, we disagree with the town's contention that, in the absence of authority to replace a defaulting tenant with one that will provide a consistent revenue stream to discharge the tax obligations, "§ 12-163a would be a toothless lion, able to roar, but not bite." Moreover, the town's argument erroneously assumes that the property owner generally lacks an incentive to regain the income produced from its rental property. It is doubtful that the

legislature had in mind the unusual circumstances of abandoned rental property at issue in this case. To the extent that the town believes that greater authority is essential to vindicating its interests, especially in cases like the present one, in which the owner has abandoned the property and purported environmental contamination makes foreclosure of the property an impractical alternative; see, e.g., General Statutes § 12-157; General Statutes § 12-181 et seq.; its recourse lies with the legislature.

The judgment of the Appellate Court is reversed only as to the reversal of the trial court's judgment granting the receiver's motion for modification allowing the collection of back rent allegedly due and the case is remanded to that court with direction to affirm the trial court's judgment in that respect; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion ROGERS, C. J., and PALMER, ESPINOSA and VERTEFEUILLE, Js., concurred.

[1] Cadle did not appear in the trial court, and neither Cadle nor Boardwalk Realty Associates, LLC, which was appointed as receiver by the trial court, are parties to this appeal. For convenience, we refer to Boardwalk Realty Associates, LLC, generically as the receiver in this opinion.

[2] The lease between Cadle and the tenant expired in 2001. The tenant represented to the trial court that it thereafter continued to occupy the premises on a month to month oral lease, but did not place in escrow rent due after Cadle "essentially disappeared."

[3] The tenant conceded before the trial court that, under its original lease with Cadle, it had agreed to include certain taxes due to the town in its payments to Cadle.

[4] As we explain in footnote 5 of this opinion, when an owner causes a notice to quit to be served on a tenant, such an action is not used to collect past due rent, but to recover possession of the premises.

[5] "[A]fter a notice to quit possession has been served, a tenant's fixed tenancy is converted into a tenancy at sufferance. . . . A tenant at sufferance is released from his obligations under a lease. . . . His only obligations are to pay the reasonable rental value of the property which he occupied in the form of use and occupancy payments . . . and to fulfill all statutory obligations." (Internal quotation marks omitted.) *Waterbury Twin, LLC* v. *Renal Treatment Centers–Northeast, Inc.*, supra, 292 Conn. 473 n.18; see also General Statutes § 47a-3c ("[i]n the absence of agreement, the tenant shall pay the fair rental value for the use and occupancy of the dwelling unit"). We note, however, that a notice to quit is itself not a method by which an owner collects or receives rents, but rather is a legal mechanism to regain possession of the premises from the defaulting tenant.

[6] See Conn. Joint Standing Committee Hearings, supra, pp. 49–50, remarks of Representative Godfrey (explaining as sponsor of bill, subsequently codified as § 12-163a, that bill "gives municipalities the same kind of power we currently give to utilities, which can petition for receivership of rent for back payment of electric, water, power," referring to § 16-262f).

[7] In addition to the absence of any express authority for the receiver to enter into a new lease, the statute provides no basis to infer a permissible term for such a lease, thus leaving questions as to whether it would be limited to some presumed period of the receivership or beyond that period.