LUCIANO SPROVIERO ET AL. *v.* J.M. SCOTT
ASSOCIATES, INC.
(AC 28135)

Gruendel, Lavine and Pellegrino, Js.

Argued March 10—officially released June 17, 2008

*Bruce L. Elstein,* for the appellant (defendant).

*James Ryan Mulvey,* with whom was *David F. Bennett,* for the appellees (plaintiffs).

PELLEGRINO, J. The present case arises from a lease dispute between the tenant plaintiffs, Luciano Sproviero and Anthony Bernardo, and the landlord defendant, J.M. Scott Associates, Inc. The defendant appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiffs. The defendant claims that the court improperly concluded that the plaintiffs (1) were not liable for costs incurred by the defendant in repairing and maintaining the property's septic system, (2) were not liable in nuisance and (3) did not breach the lease. We affirm the judgment of the trial court.

The facts and procedural history of this case have turned an ordinary lease dispute into a tangled web of litigation. We delve into this matter by first setting forth the facts as found by the court in its memorandum of decision. The parties entered into a twenty year lease, commencing September 1, 1979, for 1440 square feet of commercial property to be used by the plaintiffs for operating a Laundromat and dry cleaning business. The rent was payable monthly at the rate of $360 and was to remain unchanged throughout the term of the lease, except to account for increases in insurance and taxes. The plaintiffs had an option to renew the lease for an additional twenty years, at a mutually agreed on rental rate, by notifying the defendant in writing two years prior to the expiration of the original lease.

Attached to and made part of the lease was a document dated August 1, 1979, entitled "Conditions to Lease." The conditions provided, among other things, that "[t]he septic tank and system is to be maintained by the lessee, and the septic tank is to be cleaned out not less than twice a year by him and once a year by Mr. Ed of Ed's Beauty Salon next door." Mr. Ed never

cleaned the septic tank and ceased being a tenant around 1990.

The parties entered into a supplemental agreement dated July 10, 1986. By this agreement, the defendant granted the plaintiffs the right to expand the septic system in exchange for their promise to maintain the entire system and perform all routine maintenance. "Routine maintenance" is not defined in the agreement. The agreement, however, does provide that the plaintiffs "shall not be responsible for any damages or problems caused by the increased use or misuse of said septic system by other tenants . . . ." The plaintiffs spent $40,000 of their money to expand the septic system and thereafter maintained it in compliance with their lease obligations through December 13, 1999.

On August 18, 1997, the plaintiffs timely notified the defendant of their intent to exercise their option to renew the lease and asked that the parties meet to agree on a new rental rate. The defendant contacted the plaintiff by letter dated December 23, 1998, and acknowledged the plaintiffs' desire to renew the lease, but stated that the plaintiffs must agree to certain additional terms before it would agree to renew the lease. The plaintiffs did not agree to those terms. On June 23, 1999, the defendant sent another letter to the plaintiffs, stating that it was willing to enter into a *new* lease. This letter contained six conditions that the defendant required the plaintiffs to agree to before it would enter into a new lease. None of the conditions was in the original lease or the renewal clause of the original lease. The letter also stated that the rate for the new lease would be $5 per square foot plus taxes, insurance and maintenance. The plaintiffs again did not agree to any of the new conditions set forth by the defendant. On August 31, 1999, the lease expired.

Around September 1, 1999, Bernardo was contacted by telephone by the defendant and informed that the

new rent would be $583 per month plus taxes, insurance and maintenance, for a total monthly rate of $806. The plaintiffs paid this monthly rate from September, 1999, through July, 2002.

By letter dated July 12, 2002, the defendant notified the plaintiffs of an increase in their total monthly rent. The letter stated that their present monthly rent was $583 plus taxes, insurance and maintenance. Increases for cost of living, insurance, taxes and maintenance raised the total monthly rent to $940.[1] From July 12, 2002, the plaintiffs have continued to pay $940 monthly.

The facts of this case resulted in two separate legal actions. The first was a summary process action[2] (summary process action) begun by the defendant on December 13, 1999, when it served a notice to quit possession on the plaintiffs, demanding that the plaintiffs vacate the premises by December 31, 1999. The notice stated that any payments tendered after December 31, 1999, would be accepted for use and occupancy only and not

[1] The propriety of the cost of living and other rent increases were not challenged at trial.

[2] "Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination." (Citations omitted; internal quotation marks omitted.) *Young* v. *Young*, 249 Conn. 482, 487, 733 A.2d 835 (1999).

"[Summary process] is preceded by giving the statutorily required notice to quit possession to the tenant. . . . Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease. The lease is neither voided nor rescinded until the landlord performs this act and, upon service of a notice to quit possession, a [leasehold] is converted to a tenancy at sufferance." *Housing Authority* v. *Hird*, 13 Conn. App. 150, 155, 535 A.2d 377, cert. denied, 209 Conn. 825, 552 A.2d 433 (1988).

The defendant's notice to quit possession gave four reasons for the eviction: (1) lapse of time; (2) by reason of expressed stipulation in the rental agreement or lease; (3) violation of the rental agreement or lease; and (4) nuisance as defined in General Statutes § 47a-32.

for rent. The defendant thereafter filed a three count summary process complaint, with a return date of May 31, 2000. An answer to the complaint was not filed until February 12, 2003.[3]

Meanwhile, the plaintiffs filed their complaint (plaintiffs' action), with a return date of March 7, 2000, alleging that (1) the defendant's failure to renew the lease was a breach of contract and (2) the defendant breached the lease by permitting other tenants to use the septic system. On November 10, 2004, the defendant amended its answer to set forth a two count counterclaim. The counterclaim sought legal and equitable relief for (1) the plaintiffs' breach of lease by their failure to maintain the septic system and (2) damage caused by the septic system's failure.

The court found that the facts supporting the defendant's counterclaim arose between August, 1999, and November, 2004. Specifically, water began surfacing at some point in 2000. The plaintiffs fixed this problem, which was caused by a toilet that was left running when another tenant of the defendant vacated the premises. In 2003, another breakout occurred, and the plaintiffs called their engineer, Dudley Ashwood, who had designed the 1986 addition to the septic system. Ashwood inspected the septic system on February 6, March 5 and April 16, 2003, and observed no active leaching system failure. He did find that the plaintiffs substantially reduced their water usage between 1997 and 2002. The plaintiffs resisted making any substantial repairs to the septic system during this period because the defendant was trying to evict them.

---

[3] Although summary process is designed to secure a prompt hearing; see footnote 2; no reason was given for the lengthy delay in this case. The court made reference to this fact, stating that it "is not unmindful of the fact that the word 'summary' may not exactly describe the path or speed of this process."

In January, 2004, counsel for the defendant notified the plaintiffs that they had failed to maintain the septic system, that the system was failing and that breakouts were occurring. On April 12, 2004, the Pomperaug district department of health (department) cited the defendant for the sewage overflow that was occurring at its property. The department did not cite the plaintiffs. Between 2004 and 2006, the defendant spent $125,000 in pumping the septic tanks to prevent breakouts. The cost of replacing the entire septic system would have been approximately $30,000.

The summary process action and the plaintiffs' action were consolidated for trial and, subsequently, tried to the court on August 30, 2006. In the summary process action, the court found in favor of the plaintiffs on all counts, concluding that the lease was renewed and that they were not breaching its provisions. Neither party appealed from that judgment, and, accordingly, it is not part of this appeal.

In the plaintiffs' action, the court likewise found that the lease was renewed. The court found that the defendant's actions in contacting the plaintiffs and informing them of a rent increase was a proposal for a new rent, as contemplated by the option to renew, which the plaintiffs accepted by paying. The parties, therefore, had an enforceable twenty year lease, commencing September 1, 1999, under the same terms as the original lease except for the rent. The court concluded that the defendant's failure to recognize the renewed lease was a breach of contract. Accordingly, the court rendered judgment for the plaintiffs as to their breach of contract claim.

In the breach of lease claim, the court found that the proof presented at trial did not establish by a preponderance of the evidence that the defendant breached the

lease by permitting other tenants to use the septic system. The court accordingly rendered judgment in favor of the defendant as to that claim.

Turning to the defendant's counterclaim, the court found that the defendant had not sustained its burden of proof on either count. Specifically, the court found that the evidence did not show that the plaintiffs failed to maintain the septic system in accordance with the lease. Moreover, the court found that other parties were responsible for the septic system's failure and that other parties failed to maintain the septic system. The plaintiffs, therefore, were not liable for damages caused by the system's failure. Accordingly, the court rendered judgment in favor of the plaintiffs on the defendant's counterclaim.

The defendant has appealed from the court's judgment on its counterclaim. It is helpful at the outset, however, to note what is not at issue in this appeal. There is no challenge to any aspect of the court's ruling pertaining to the summary process action. Similarly, there is no challenge to the court's finding that the plaintiffs exercised their option to renew the lease. The defendant, in fact, concedes that the parties have a valid twenty year lease that commenced September 1, 1999, under the same terms as the original lease except for the rent. Accordingly, we need not review any of these issues. We now address the defendant's claims.[4]

[4] The defendant raises two claims that require little discussion. First, it claims that the court improperly found that it was required to repair the septic system. The court, however, made no such finding. In its memorandum of decision, the court questioned why the defendant chose to pump the septic system repeatedly at a total cost of $125,000, when repairing the system would cost only $30,000. Because there is no finding that the defendant was required to repair the system, the defendant's claim fails.

Next, the defendant claims that the court improperly concluded that the defendant had a duty to mitigate damages. The court made no such ruling. The duty to mitigate damages arises only when a party is entitled to an award of damages. See, e.g., *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 229, 676 A.2d 844 (1996) ("in the contracts and torts contexts . . . the party receiving

## I

The defendant's first claim is that the court improperly concluded that the plaintiffs were not liable for costs it incurred in repairing and maintaining the septic system. The defendant argues that under the terms of the lease, which the court found to be renewed, the maintenance of the septic system was the plaintiffs' responsibility, and, accordingly, they must reimburse the defendant for the costs it incurred in pumping the septic system between 2004 and 2005. We disagree.

The defendant's claim is for damages, which we generally review under the abuse of discretion standard. When, however, a damages award is challenged on the basis of a question of law, our review is plenary. *Motherway* v. *Geary*, 82 Conn. App. 722, 726, 846 A.2d 909 (2004).

### A

The defendant's first argument is that the lease was in effect during the pendency of this action. We find, however, that the lease was not in effect while this litigation was pending.

Our law makes clear that after a notice to quit possession has been served, a tenant's fixed tenancy is converted into a tenancy at sufferance. *Housing Authority* v. *Hird*, 13 Conn. App. 150, 155, 535 A.2d 377, cert. denied, 209 Conn. 825, 552 A.2d 433 (1988). A tenant at sufferance is released from his obligations under a lease. *Feneck* v. *Nowakowski*, 146 Conn. 434, 436, 151 A.2d 891 (1959); *Welk* v. *Bidwell*, 136 Conn. 603, 609, 73 A.2d 295 (1950) (tenant at sufferance has no duty to

---

a damage award has a duty to make reasonable efforts to mitigate damages"). The court ruled in favor of the plaintiffs on the defendant's counterclaim, thereby ruling that the defendant was not entitled to an award of damages. The court accordingly made no finding that the defendant had a duty to mitigate damages, and this claim fails.

pay rent). His only obligations are to pay the reasonable rental value of the property which he occupied in the form of use and occupancy payments;[5] *Welk* v. *Bidwell,* supra, 609; and to fulfill all statutory obligations. *Housing Authority* v. *Hird,* supra, 157 ("[t]he statutory obligations of the landlord and tenant continue even when there is no longer a rental agreement between them").

In the present case, the defendant served the plaintiffs with notice to quit possession on December 13, 1999. Upon service of the notice to quit possession, the plaintiffs' fixed tenancy was converted to a tenancy at sufferance, and the plaintiffs temporarily were relieved of their obligation to maintain the septic system. Accordingly, the lease was not in effect during the pendency of this litigation, and the defendant is not entitled to reimbursement of costs it incurred in maintaining the septic system.

B

The defendant also argues that because the plaintiffs prevailed in the summary process action, their lease obligations were revived retroactively when their tenancy at sufferance was converted back to a leasehold estate. We disagree.

This court previously has stated that an original lease can be "revived," "restored" and returned to its original "status quo" by a judgment rendered in favor of a tenant in a summary process action. *Housing Authority* v. *Hird,* supra, 13 Conn. App. 157. In such an instance, a tenant's judgment "effectively erase[s] the court slate clean as though the eviction predicated on the . . . notice to quit possession had never been commenced. The plaintiff and the defendant [are] back to square

---

[5] The defendant does not claim that the plaintiffs failed to make use and occupancy payments.

one, and the continuation of their [original lease is] restored." (Internal quotation marks omitted.) Id.

The defendant reads the quoted language from *Hird* as holding that lease obligations that were extinguished during the tenancy at sufferance are revived retroactively to the date the notice to quit was served if the landlord loses the summary process action.[6] The defendant argues that if the parties go back to square one as if the notice to quit possession had never been served, the plaintiffs would have been obligated to maintain the septic system and, therefore, would have incurred the costs that the defendant incurred in maintaining it.[7] Accordingly, the defendant claims that it is entitled to reimbursement for the cost of maintaining the septic system while the plaintiffs were tenants at sufferance. We do not agree.

Although the *Hird* court stated that the parties go back to square one as if the summary process action had never been commenced, *Hird* does not stand for the proposition that a lease can be revived retroactively. The language the defendant cites ignores the court's use of phrases such as "[the tenant's judgment] 'revived' the original lease arrangement"; id., 155; and "continuation of their lease . . . was restored." Id., 157. Such phrases connote the prospective application of a lease's provisions, rather than indicating retroactive revival.

---

[6] This issue typically does not arise because of the speed in which a summary process action is decided. See footnote 2. In the present case, the summary process action began in December, 1999, and was decided in September, 2006.

[7] The defendant also asserts an alternative theory for concluding that the court improperly failed to find the plaintiffs liable. He claims that the plaintiffs were holdover tenants at will and, therefore, were obligated to maintain the septic system under the terms of the original lease. This claim has no merit and can summarily be disposed of. Upon the service of the December 13, 1999 notice to quit possession, the plaintiffs became tenants at sufferance. See *Housing Authority* v. *Hird*, supra, 13 Conn. App. 155. Accordingly, the plaintiffs were not tenants at will.

Furthermore, retroactive revival is unnecessary in light of a tenant at sufferance's obligation to make use and occupancy payments during his tenancy. Use and occupancy payments encompass a fair rental value of the property, which necessarily accounts for obligations that are assumed by a landlord in renting the property, such as septic system maintenance. See *Welk* v. *Bidwell*, supra, 136 Conn. 609. Although, in many instances, use and occupancy payments are equal to the parties' previously agreed upon rent, a landlord may be entitled to a larger use and occupancy payment when it is forced to assume obligations that were once the responsibility of a tenant under a lease. See, e.g., *Young* v. *Vlahos*, 103 Conn. App. 470, 481, 929 A.2d 362 (2007) (finding tenant at sufferance liable for sewer and water charges incurred during the tenancy at sufferance), cert. denied, 285 Conn. 913, 943 A.2d 474 (2008). A revived lease, therefore, does not need to apply retroactively because the landlord is compensated for assuming a tenant's obligations through use and occupancy payments.

In the present case, the plaintiffs paid $806 in monthly rent for September, October, November and December, 1999. On December 13, 1999, the defendant served the plaintiffs with the notice to quit possession. The notice stated that any payments tendered by the plaintiffs after December 31, 1999, would be accepted as use and occupancy payments only and not as rent. Accordingly, payments made by the plaintiffs beginning January, 2000, were contemplated by the defendant as being use and occupancy payments and not rent. The plaintiffs thereafter continued to pay $806 per month as use and occupancy payments as directed by the defendant.

On July 12, 2002, the defendant notified the plaintiffs that their "rent" was increasing to $940 per month. Although the defendant characterizes this as a "rent" increase, it is better designated as an increase in the

use and occupancy payments because, as the defendant recognized in its notice to quit possession, the plaintiffs were not obligated to pay rent during their tenancy at sufferance. The plaintiffs acquiesced to this increase, thereby avoiding the need for a judicial determination of the fair rental value of the property. See General Statutes § 47a-26b. The defendant, therefore, received an agreed upon compensation for the plaintiffs' use and occupancy of the premises during their tenancy at sufferance.

If the defendant believed $940 per month did not represent the fair rental value of the property, it could have sought an increase in the plaintiffs' use and occupancy payment. The plaintiffs, in fact, agreed without complaint to the first increase to $940 per month. The defendant, however, is not entitled to reimbursement for the costs it incurred in maintaining the septic system during the plaintiffs' tenancy at sufferance, as the plaintiffs fulfilled their financial obligations by making the requested use and occupancy payments. Accordingly, the defendant's claim fails.

II

The defendant next claims that the court improperly concluded that the plaintiffs were not liable for nuisance. Specifically, the defendant claims that the court failed to find that the plaintiffs had a statutory obligation under General Statutes § 47a-11[8] to prevent sewage

---

[8] General Statutes § 47a-11 provides in relevant part: "A tenant shall: (a) Comply with all obligations primarily imposed upon tenants by applicable provisions of any building, housing or fire code materially affecting health and safety . . . (g) conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a nuisance, as defined in section 47a-32, or a serious nuisance, as defined in section 47a-15 . . . ."

General Statutes § 47a-32 defines nuisance as including, but not limited to, "any conduct which interferes substantially with the comfort or safety of other tenants or occupants of the same or adjacent buildings or structures."

General Statutes § 47a-15 defines serious nuisance, in relevant part, as "substantial and wilful destruction of part of the dwelling unit or premises

breakouts during their tenancy at sufferance, which they failed to do, and are now liable for the costs the defendant incurred in pumping the septic system to prevent such breakouts. We disagree.

"Although the existence of a nuisance generally is a question of fact, for which we invoke a clearly erroneous standard of review . . . where the court makes legal conclusions or we are presented with questions of mixed law and fact, we employ a plenary standard of review . . . ." (Citation omitted.) *Kinsale* v. *Tombari*, 95 Conn. App. 472, 479, 897 A.2d 646 (2006).

Although we agree with the defendant that the plaintiffs statutorily were obligated not to conduct themselves in such a manner as to constitute a nuisance; see *Rivera* v. *Santiago*, 4 Conn. App. 608, 610, 495 A.2d 1122 (1985); we cannot say that the court's findings of fact show that the plaintiffs behaved in such a manner or that any of these findings are clearly erroneous in light of the evidence presented at trial. The record supports the court's finding that the plaintiffs were not at fault for the sewage breakouts. At least two other tenants ran pipes from their buildings into the septic tanks and other tenants failed to pump the septic system as required. In addition, there is no evidence showing that the breakouts were caused by the plaintiffs. In fact, the evidence showed that the breakouts first began in 2000 and that the plaintiffs substantially reduced their water usage between 1997 and 2002. Moreover, the defendant has not shown how the plaintiffs, as tenants at sufferance, were obligated to prevent breakouts from occurring when the defendant was responsible for maintaining the septic system. See part I.

[or] conduct which presents an immediate and serious danger to the safety of other tenants or the landlord . . . ."

On the basis of the evidence presented at trial, we cannot say that the court's findings are clearly erroneous. Similarly, we cannot say that these findings evidence a violation of any statute. Accordingly, the defendant's claim fails.

### III

The defendant's next claim is that the court improperly found that the plaintiffs did not breach their lease. Specifically, the defendant claims that the court improperly found that (1) the lease obligated parties other than the plaintiffs to maintain the septic system, (2) the sewage breakouts were caused, in part, by other parties and (3) the plaintiffs maintained the septic system as required by the lease. We disagree.

It is helpful at the outset to clarify the scope of the defendant's claim. The defendant's claim arises from the lease and, therefore, concerns only the time period when the lease was in effect. As discussed in part I, the lease was ineffectual during the plaintiffs' tenancy at sufferance, and, accordingly, the plaintiffs had no leasehold obligations until the lease was revived. Because the defendant's claim is based on acts that occurred while the plaintiffs were still obligated under the lease, it is limited to the lease period from September 1, 1979, through December 13, 1999.

We now set forth the applicable standard of review. The defendant's claim presents a question of contract interpretation because "a lease is a contract, and, therefore, it is subject to the same rules of construction as other contracts. . . . The standard of review for the interpretation of a contract is well established. Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over

which our review is plenary].'' (Citation omitted, internal quotation marks omitted.) *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 7, 931 A.2d 837 (2007).

''Whether there was a breach of contract is ordinarily a question of fact. . . . We review the court's findings of fact under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . .'' (Internal quotation marks omitted.) *Czaplicki* v. *Ogren*, 87 Conn. App. 779, 785, 868 A.2d 61 (2005).

The first portion of the defendant's claim is that the court improperly interpreted the lease to find that other parties were obligated to maintain the septic system. We disagree. The relevant conditions to the original lease provided that ''[t]he septic tank and system is to be maintained by the lessee, and the septic tank is to be cleaned out not less than twice a year by him and once a year by Mr. Ed of Ed's Beauty Salon next door.'' The parties altered this clause by mutual agreement in 1986. Under the supplemental agreement, the plaintiffs agreed ''to maintain the entire system in good repair at [their] own expense and to perform all routine maintenance as may be suggested by the engineer . . . .'' The agreement further provided that the plaintiffs ''shall not be responsible for any damages or problems caused by the increased use or misuse of said septic system by other tenants; and, in the event that such increased use or misuse shall be caused by other tenants, then such

tenant or tenants will be responsible for the same." On the basis of this definitive language, we conclude, as did the trial court, that other parties were obligated to maintain the septic system. Specifically, prior to the supplemental agreement, the plaintiffs were required to perform two of the three septic tank cleanings each year. After the supplemental agreement, other parties were obligated to maintain the septic system if another tenant increased his use or misused the septic system.

Next, the defendant claims that the court improperly found that other parties were at fault for the sewage breakouts. On the basis of the evidence, we cannot say that the court's finding is clearly erroneous. The evidence showed that at least two other tenants ran pipes to the septic tank and that other parties discharged into the septic system. This evidence supports the court's finding that other parties were at fault for the sewage breakouts.

Finally, the defendant claims that the court's finding that the plaintiffs were not in breach of their lease by failing to maintain the septic system was clearly erroneous. We disagree. Evidence showed that the plaintiffs had the septic system pumped regularly and that no breakouts occurred while the plaintiffs were obligated to maintain it. Breakouts occurred only while the plaintiffs were tenants at sufferance. The fact that no breakouts occurred during the plaintiffs' leasehold supports the court's finding that they had not breached the lease. Accordingly, we cannot say that the court's finding that the plaintiffs did not breach the lease was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.