# VIDIAKI, LLC *v.* JUST BREAKFAST AND THINGS!!! LLC, ET AL.
## (AC 32554)

Beach, Robinson and Espinosa, Js.

1

Argued October 13, 2011—officially released January 17, 2012

*Kevin E. Booth*, with whom were *Geraldine Ficarra* and, on the brief, *Richard J. Pascal*, for the appellant (plaintiff).

*Jon B. Chase*, with whom, on the brief, was *Richard S. Cody*, for the appellee (named defendant).

*Opinion*

ROBINSON, J. The present case arises from a lease dispute between the landlord plaintiff, Vidiaki, LLC, and the tenant defendant Just Breakfast & Things!!! LLC.[1] The plaintiff appeals from the judgment rendered in favor of the defendant after a trial to the court. On appeal, the plaintiff contends that the court erred in (1) ruling that General Statutes § 47a-11 did not apply to commercial tenancies because such ruling violated the law of the case doctrine, (2) finding that § 47a-11 did not apply to commercial tenancies, (3) dismissing count one of the amended complaint, (4) not allowing the plaintiff to plead the sixth count of the complaint in the alternative and (5) dismissing the sixth count of the complaint. We reverse the judgment as to count one of the amended complaint and affirm the judgment in all other respects.

The record discloses the following facts and procedural history. The plaintiff and the defendant entered

---

[1] The plaintiff also brought suit against the defendant Mary Thompson, doing business as Endless Vacations II (Endless Vacations). The court rendered judgment on count four of the complaint in favor of Endless Vacations and Just Breakfast & Things!!! LLC, at a posttrial hearing on July 9, 2010. The plaintiff did not appeal from that portion of the court's judgment. Because Thompson is not a party to this appeal, we refer to Just Breakfast & Things!!! LLC, as the defendant.

into a commercial lease agreement on July 31, 2007, for the use and occupancy of premises located at 13 River Road, Route 12, in Lisbon. The terms of the lease provided that the lease was to terminate on June 30, 2009. On April 8, 2009, the plaintiff served on the defendant a notice to quit possession of the subject premises. The defendant failed to quit possession of the premises, and the plaintiff then filed a five count summary process complaint on April 24, 2009. In the first count of the complaint, the plaintiff alleged a violation of the lease agreement. The second count alleged a claim that the defendant had violated the rules and regulations adopted by the plaintiff in accordance with General Statutes § 47a-9. The third count set forth a claim that the defendant violated § 47a-11. In the fourth count, the plaintiff alleged that the defendant and Endless Vacations violated the lease agreement. The fifth count alleged that the defendant no longer had the privilege or right to occupy the subject premises. The plaintiff filed a second notice to quit on June 30, 2009, asserting that the lease had terminated by lapse of time. The plaintiff filed an amended complaint on July 8, 2009, in which it withdrew count two and count five, and asserted count six setting forth a claim that the lease had terminated by lapse of time.

The defendant filed a motion to strike count six of the amended complaint on September 9, 2009, asserting that it was legally insufficient to state a claim on which relief could be granted. The trial court, *Young, J.*, denied the motion on September 21, 2009. The defendant filed a motion to dismiss count six of the amended complaint on October 6, 2009, contending that the first notice to quit served on April 8, 2009, terminated the lease and created a tenancy at sufferance. Judge Young granted the defendant's motion and dismissed count six of the complaint.

The defendant filed a motion for summary judgment as to the first and third counts on November 30, 2009. Judge Young, sua sponte, dismissed the first and fourth counts of the plaintiff's complaint based on a lack of subject matter jurisdiction and denied the defendant's motion for summary judgment as to count three.[2]

The *Hon. Joseph H. Goldberg*, judge trial referee, conducted a trial on the remaining counts on June 28 and 29, 2010. In its memorandum of decision, the court determined that § 47a-11 did not apply to commercial tenancies, and, as such, found in favor of the defendant as to count three of the complaint. See footnote 1 of this opinion. This appeal followed.[3] Additional facts will be set forth as necessary.

I

The plaintiff first argues that the court erred in ruling that § 47a-11 did not apply to commercial tenancies when that conclusion was contrary to earlier rulings in the case. The plaintiff asserts that the previous rulings constituted the law of the case, and, accordingly, the court should not have diverged from the conclusion already reached on the issue of the applicability of § 47a-11 to commercial tenancies. We disagree. Because application of the law of the case doctrine involves a question of law, our review is plenary. See *General Electric Capital Corp. of Puerto Rico* v. *Rizvi*, 113 Conn. App. 673, 681, 971 A.2d 41 (2009).

The following additional facts are relevant to the resolution of the plaintiff's claim. The defendant filed

---

[2] The plaintiff filed a motion to reargue, contending that the court improperly dismissed count four of the complaint despite the fact that it was not included in the motion for summary judgment. After a hearing on the matter, the court vacated the order pertaining to only count four on April 1, 2010.

[3] The defendant contends on appeal that the plaintiff's appeal was untimely, and, as a result, that it should be dismissed. On August 16, 2010, the defendant filed in this court a motion to dismiss the appeal as untimely. We denied that motion on November 3, 2010.

a motion for summary judgment on November 30, 2009. The defendant contended that summary judgment on count three was appropriate because § 47a-11 did not apply to commercial leases. In its memorandum of decision on the motion for summary judgment dated February 4, 2010, the court, *Young, J.*, concluded that "[a]s there is no direct appellate holding or legislative guidance to the contrary on this issue, this court finds that commercial tenants are subject to the provisions of General Statutes § 47a-11."

On April 5, 2010, the defendant and Endless Vacations moved to dismiss count three of the complaint due to a lack of subject matter jurisdiction, alleging that § 47a-11 did not apply to commercial tenancies. Judge Young held a hearing on June 14, 2010, and denied the defendant's motion. In making its determination, the court stated, "I would like to reiterate . . . that the court recognizes there's a lack of legislative and appellate guidance on this issue as to applicability of various sections of the chapter to commercial leases . . . . I do note that defense counsel has alleged [that § 47a-11 does not apply to commercial tenancies] as one of his special defenses, so I presume that we're going to see this again during the litigation of this matter. I'm not going to preclude counsel from arguing it to Judge Goldberg, so there is no finality here today on this motion. . . . I don't want to take the issue away from Judge Goldberg if he makes a determination that based on the totality of facts presented to him as he finds them that this decision cannot be reversed, I guess is what I'm trying to say. In other words, I'm not tying his hands."

A trial was held on June 28 and 29, 2010. After the conclusion of the trial, Judge Goldberg found in favor of the defendant as to count three and concluded that § 47a-11 did not apply to commercial tenancies. The court noted that our Supreme Court previously had recognized that chapter 830 of the General Statutes,

which includes § 47a-11, applies only to residential tenancies; however, the legislature in 1997 added two provisions to chapter 830 that expressly refer to commercial tenancies. The trial court then sought to determine if the 1997 provisions altered the existing statutory scheme of chapter 830 so that § 47a-11 applies to commercial tenancies. After examining the text of § 47a-11 and the definitions pertaining to chapter 830, Judge Goldberg determined that § 47a-11 does not apply to commercial tenancies.

We begin our analysis of the plaintiff's claim with a review of the law of the case doctrine. The law of the case doctrine "expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . .

"A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he [or she] has the same right to reconsider the question as if he [or she] had himself [or herself] made the original decision. . . . This principle has been frequently applied to an earlier ruling during the pleading stage of a case . . . . According to the generally accepted view, one judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law. . . .

"This court has determined that although a judge should be hesitant to rule contrary to another judge's

ruling, he or she may do so [n]evertheless, if the case comes before him [or her] regularly and [the judge] becomes convinced that the view of the law previously applied by [a] coordinate predecessor was clearly erroneous and would work a manifest injustice if followed . . . . By way of example, this court has noted that [t]he adoption of a different view of the law by a judge in acting upon a motion for summary judgment than that of his [or her] predecessor . . . is a common illustration of this principle. . . . From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling." (Internal quotation marks omitted.) *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 656–57, 954 A.2d 816 (2008).

On the basis of our review of the record, it is apparent that the parties did not understand Judge Young's decision to determine conclusively, for purposes of the case, that § 47a-11 applies to commercial leases. Rather, Judge Young explicitly stated at the hearing on June 14, 2010, that he presumed that this issue would arise again during the litigation of the case and that his determination was not final, nor did it preclude the defendants from arguing to the contrary before Judge Goldberg. Although Judge Young previously determined in ruling on the motion for summary judgment that § 47a-11 applies to commercial leases, at the hearing on June 14, 2010, he explicitly left open the possibility of an alternative interpretation by Judge Goldberg at the trial on the merits. Thus, the parties were aware that this issue might arise again during the course of litigation.

Furthermore, the law of the case doctrine does not preclude a judge from deciding an issue in a way contrary to how it was decided by a predecessor judge in the same case. The plaintiff argued at oral argument

before this court that a court must explicitly mention the prior ruling against which it is deciding. The plaintiff, however, does not provide any authority for such a rule. Although Judge Goldberg did not explicitly state that Judge Young had decided the issue previously, and that he disagreed with that conclusion, he could still decide the issue differently without violating the law of the case doctrine. It is also important to note that in this case, the prior ruling at issue occurred in a summary judgment proceeding. The law of the case doctrine provides that judges may treat a prior ruling as the law of the case if they agree with the determination. He or she may, however, decide the issue differently if he or she is convinced that the prior decision is wrong. On the basis of the memorandum of decision following the trial, it is apparent that Judge Goldberg disagreed with Judge Young on the issue of the applicability of § 47a-11 to commercial leases. As a result, it was not necessary for Judge Goldberg to treat Judge Young's prior rulings as the law of the case. Therefore, we find no error.

## II

The plaintiff next contends that the trial court erred in determining that § 47a-11 did not apply to commercial tenancies. The plaintiff argues that there is both statutory and appellate authority to demonstrate that commercial tenancies fall within the ambit of § 47a-11. After examining the language of § 47a-11 and the relevant appellate authority, we disagree with the plaintiff and conclude that § 47a-11 is not applicable to commercial tenancies.

As the plaintiff's claim presents a question of statutory interpretation, the trial court's legal conclusions are subject to plenary review. *Brown & Brown, Inc.* v. *Blumenthal*, 297 Conn. 710, 721, 1 A.3d 21 (2010). "The

process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) Id., 722.

We begin our review with the language of the statute. Section 47a-11 provides: "A tenant shall: (a) Comply with all obligations primarily imposed upon tenants by applicable provisions of any building, housing or fire code materially affecting health and safety; (b) keep such part of the premises that he occupies and uses as clean and safe as the condition of the premises permit; (c) remove from his dwelling unit all ashes, garbage, rubbish and other waste in a clean and safe manner to the place provided by the landlord pursuant to subdivision (5) of subsection (a) of section 47a-7; (d) keep all plumbing fixtures and appliances in the dwelling unit

or used by the tenant as clean as the condition of each such fixture or appliance permits; (e) use all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances, including elevators, in the premises in a reasonable manner; (f) not wilfully or negligently destroy, deface, damage, impair or remove any part of the premises or permit any other person to do so; (g) conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a nuisance, as defined in section 47a-32, or a serious nuisance, as defined in section 47a-15; and (h) if judgment has entered against a member of the tenant's household pursuant to subsection (c) of section 47a-26h for serious nuisance by using the premises for the illegal sale of drugs, not permit such person to resume occupancy of the dwelling unit, except with the consent of the landlord."

To interpret the language of § 47a-11, we must look to the definitions applicable to chapter 830 set forth in General Statutes § 47a-1. Of primary importance, the term "dwelling unit," which is used throughout § 47a-11, is defined in § 47a-1 (c) as "any house or building, or portion thereof, which is occupied, is designed to be occupied, or is rented, leased or hired out to be occupied, *as a home or residence* of one or more persons." (Emphasis added.) The term "dwelling unit" thus is clearly meant to refer to a home or residence. The term "dwelling unit" is included in various other definitions of terms found in § 47a-11 as defined in § 47a-1. For example, the term "landlord" is defined as "the owner, lessor or sublessor of the dwelling unit, the building of which it is a part or the premises." General Statutes § 47a-1 (d). Likewise, the term "premises" also refers to the "dwelling unit" and is defined as "a dwelling unit and the structure of which it is a part and

facilities and appurtenances therein and grounds, areas and facilities held out for the use of tenants generally or whose use is promised to the tenant." General Statutes § 47a-1 (g). Last, the term "tenant" as used in § 47a-11, is defined as "the lessee, sublessee or person entitled under a rental agreement to *occupy a dwelling unit or premises* to the exclusion of others or as is otherwise defined by law." (Emphasis added.) General Statutes § 47a-1 (*l*). The terms as used in § 47a-11 all hinge on the term "dwelling unit," which is statutorily defined to mean a home or residence. Based on the statutory definitions in § 47a-1, it is clear that § 47a-11 is designed to apply solely to residential premises.

The plaintiff argues that if § 47a-11 were not meant to govern commercial tenancies, the legislature would explicitly have excluded commercial tenancies under General Statutes § 47a-2, the provision entitled, in part, "Arrangements exempted from application of title." We note that although commercial tenancies are not among the list of arrangements exempted, the arrangements that are listed all apply to particular *living arrangements*.[4] By exempting only specific types of living arrangements from chapter 830, the legislature indicated its intent that chapter 830 apply only to residential tenancies.

The plaintiff argues that although § 47a-11 may not have applied to commercial tenancies at the time of its

---

[4] General Statutes § 47a-2 (a) provides that particular arrangements are excluded from the chapter, including, "(1) Residence at an institution, public or private, if incidental to detention or the provision of medical, geriatric, educational, counseling or religious service, or any similar service; (2) occupancy under a contract of sale of a dwelling unit or the property of which such unit is a part, if the occupant is the purchaser or a person who succeeds to his interest; (3) occupancy by a member of a fraternal or social organization in the portion of a structure operated for the benefit of such organization; (4) transient occupancy in a hotel or motel or similar lodging; (5) occupancy by an owner of a condominium unit; and (6) occupancy by a personal care assistant or other person who is employed by a person with a disability to assist and support such disabled person . . . ."

enactment, the 1997 Public Acts that codified chapter 830 altered the statutory scheme to make § 47a-11 applicable to commercial leases. The 1997 Public Acts added two relevant provisions to chapter 830, both of which use language that explicitly refers to commercial tenancies.[5] When adding these provisions to the chapter, the legislature used specific language to demonstrate that these provisions were meant to apply to commercial tenancies. These are the only two provisions in chapter 830 that expressly use the term "commercial." The fact that the legislature only used the term "commercial" in those two provisions and nowhere else in the chapter cannot go unnoticed by this court. See *State* v. *Rupar*, 293 Conn. 489, 509, 978 A.2d 502 (2009) ("[a]s we have stated many times, [when] a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]). Furthermore, in 1997, the legislature did not amend any of the other provisions in chapter 830 so as to make them applicable to commercial tenancies, and, more importantly, it did not amend the statutory definitions provided in § 47a-1. We cannot conclude solely on the basis of the 1997 additions that § 47a-11 was intended to apply to commercial tenancies when the definitions relate to residential dwelling units, and the legislature has made clear elsewhere in the chapter when commercial tenancies are included.

---

[5] General Statutes § 47a-4b provides: "No lease of commercial space in a shopping center or in a building occupied by two or more businesses entered into on or after October 1, 1979, shall require a lessee to be open for business seven days a week or on any specified day of the week. Any provision in a lease which violates this section shall be void."

General Statutes § 47a-11c provides in relevant part: "If a landlord terminates a residential or commercial tenancy on the grounds that the tenant committed a breach of the rental agreement and the landlord brings an action for damages for the breach, such damages shall include the amount of rent agreed to by the parties but unpaid by the tenant. . . ."

The plaintiff relies on *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 948 A.2d 379, cert. denied, 289 Conn. 906, 957 A.2d 873 (2008), to support its argument that § 47a-11 does in fact apply to commercial tenancies. *Sproviero* involved a commercial tenancy that was converted into a tenancy at sufferance when the landlord served the tenants with a notice to quit. Id., 462. The landlord claimed that the tenants had a statutory obligation under § 47a-11 to prevent sewage breakouts during the tenancy at sufferance. Id. On appeal, this court stated that "[a]lthough we agree with the [landlord] that the [tenants] statutorily were obligated not to conduct themselves in such a manner as to constitute a nuisance . . . we cannot say that the court's findings of fact show that the [tenants] behaved in such a manner or that any of these findings are clearly erroneous . . . ." (Citation omitted.) Id., 467. The court determined that the tenants were not at fault for the sewage breakouts; thus their actions did not constitute a nuisance. Id.

The plaintiff relies on the court's dicta in *Sproviero* to argue that this court has accepted that § 47a-11 applies to commercial tenancies. We disagree with this assertion. Unlike the present case, in *Sproviero*, the court was not asked to determine whether § 47a-11 specifically applied to commercial tenancies. Rather, the court was tasked with determining whether the tenants had acted in a way that would constitute a nuisance. In reaching that decision, the court simply noted, indirectly, that the tenants had a statutory obligation not to conduct themselves in such a manner. We do not read the court's dicta regarding a finding of nuisance as asserting that § 47a-11 applies to commercial tenancies.

This conclusion is further supported by our Supreme Court's assertion in *A & M Towing & Recovery, Inc.* v. *Guay*, 282 Conn. 434, 923 A.2d 628 (2007), decided one

year prior to the *Sproviero* decision. The court was tasked with determining whether public policy prevented a commercial lessor from recovering rent in the absence of a certificate of occupancy for the premises. Id., 439–40. Before reaching that issue, the court stated that "[t]his court previously has recognized . . . that, in accordance with the definitions set forth in chapter 830 that relate solely to dwellings; see General Statutes § 47a-1; this chapter generally applies only to residential tenancies." *A & M Towing & Recovery, Inc.* v. *Guay*, supra, 442–43. Thus, one year prior to the *Sproviero* decision, our Supreme Court made clear that chapter 830 generally applies only to residential tenancies. Our reading of *Sproviero* is consistent with both *A & M Towing & Recovery, Inc.*, as well as our interpretation of the statutory language in § 47a-11. On the basis of our reading of the statute, the other relevant provisions in chapter 830 and relevant appellate authority, we conclude that § 47a-11 does not apply to commercial tenancies.

### III

The plaintiff next contends that the court erred when it sua sponte dismissed the first count of the amended complaint on the ground that the notice to quit was insufficient to apprise the defendant of the alleged lease violations. The plaintiff argues that the wording in the notice to quit was sufficient. We agree.

The following additional facts are relevant to the resolution of the plaintiff's claim. The defendant contended in its November 30, 2009 motion for summary judgment that the April 8, 2009 notice to quit did not sufficiently apprise the defendant of the specific alleged lease violations.[6] In the court's memorandum of decision dated February 4, 2010, the court noted that "[a]s

---

[6] The plaintiff also argued that the motion for summary judgment was barred by Practice Book §§ 10-7 and 10-32. Although the defendant filed a motion for summary judgment as to count one, the plaintiff contends that it in essence is a motion to dismiss, and the defendant had waived its right

summary process is a statutory creation, this court's jurisdiction is predicated upon compliance with such statutes. Any deviation or failure to comply with the statutory requirements will deprive the court of jurisdiction to hear the summary process action as to those claims. . . . If the notice to quit is defective, this court has no subject matter jurisdiction as to those claims." (Citations omitted.) The court found that "[i]n the present action, the subject lease is a commercial lease, thirteen pages in length, consisting of twenty-six sections. While it is possible that the defendants could have known the nature of the 'violations of the lease,' it is certainly also plausible that the defendants did not know all of the 'violations of the lease' that the plaintiff would ultimately claim in its complaint. . . . The court finds the notice to quit to be invalid as to claims of lease violations. The first and fourth counts, both of which are based upon the 'violations of lease' portion of the notice to quit, are hereby dismissed, sua sponte."

The plaintiff contends that the notice to quit was sufficient to apprise the defendant of the alleged lease violations, and, as a result, the court erred in dismissing count one sua sponte. The plaintiff argues that the notice to quit included one of the provisions in General Statutes § 47a-23 (a) and followed the phrasing outlined in § 47a-23 (b), and, as a result, the notice was adequate. We agree.

---

to contest the wording of the notice to quit because it had already filed a request to revise and motion to strike. This argument, however, is unavailing, as the count was not dismissed pursuant to the motion for summary judgment, but, instead, was dismissed by the court sua sponte after the court determined that it lacked subject matter jurisdiction. "The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings . . . ." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). The court could dismiss the count at any time if it determined it lacked the requisite subject matter jurisdiction. The alleged procedural inadequacies of the motion for summary judgment then are not relevant to the dismissal of count one.

We begin by noting the applicable standard of review. "A notice to quit is a condition precedent to a summary process action and, if defective, deprives the court of subject matter jurisdiction. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Furthermore, [s]ummary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Citations omitted; internal quotation marks omitted.) *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5–6, 931 A.2d 837 (2007).

Summary process actions are governed by § 47a-23 (a), which provides in relevant part: "When the owner or lessor . . . desires to obtain possession or occupancy of any land or building, any apartment in any building, [or] any dwelling unit . . . and (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons: (A) By lapse of time; (B) by reason of any expressed stipulation therein; (C) violation of the rental agreement or lease or of any rules or regulations adopted in accordance with section 47a-9 or 21-70 . . . (E) nonpayment of rent when due for commercial property; (F) violation of section 47a-11 . . . such owner or lessor . . . shall give notice to each lessee or occupant to quit possession or occupancy of such land, building, apartment or dwelling unit . . . ."

Section 47a-23 (b) specifies the type of notice required when serving a notice to quit: "The notice shall be in writing substantially in the following form: 'I (or we) hereby give you notice that you are to quit possession or occupancy of the (land, building, apartment or dwelling unit, or of any trailer or any land upon which a trailer is used or stands, as the case may be), now occupied by you at (here insert the address, including apartment number or other designation, as applicable), on or before the (here insert the date) for the following reason (here insert the reason or reasons for the notice to quit possession or occupancy *using the statutory language or words of similar import*, also the date and place of signing notice). . . .' " (Emphasis added.)

The applicable notice to quit provided: "I hereby give you notice that you are to quit possession or occupancy of the premises now occupied by you at 13 River Road, Route 12, Lisbon, Connecticut 06351 as of April 13, 2009 *for violations of the [l]ease*, or of rules and regulations adopted in accordance with Conn. Gen. Stat. Section 47a-9; violations of Conn. Gen. Stat. Section 47a-11; when Endless Vacations II occupies the premises or part thereof, but it never had a right or privilege to occupy such premises; and/or as you originally had the right or privilege to occupy such premises, but such right or privilege has terminated." (Emphasis added.)

Prior cases have addressed similar claims where a party contends that the notice to quit was defective. Generally, the notice to quit is considered adequate when the language of the notice to quit tracks the statutory language of § 47a-23 (a). In *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, supra, 284 Conn. 6, the notice to quit ordered the defendant to quit the premises due to "(1) . . . lapse of time; (2) nonpayment of rent when due for commercial property; (3) by reason of any expressed stipulation therein; (4) when one originally had the right or privilege to occupy such

premises but such right or privilege has terminated."
(Internal quotation marks omitted.) On appeal, the
court concluded that the notice to quit complied with
the statutory requirements because all of the reasons
listed in the notice to quit were "enumerated in § 47a-
23 (a)." Id. Likewise, in *Thomas E. Golden Realty Co.*
v. *Society for Savings*, 31 Conn. App. 575, 580, 626
A.2d 788 (1993), the notice to quit provided that the
defendant was to quit the premises due to " 'violation
of the lease and nonpayment for additional rent.' " On
appeal, we concluded that the trial court improperly
determined the notice to quit was inadequate because
the phrase " 'nonpayment for additional rent' " substan-
tially tracked the language of § 47a-23 (a).

Here, the notice to quit stated that the defendant
must quit the premises due to, among other things,
"violations of the [l]ease . . . ." The language of the
notice to quit significantly tracks § 47a-23 (a), which
sets as one of the bases of a notice to quit "violation
of the rental agreement or lease . . . ." Although the
notice to quit did not lay out specifically the alleged
lease violations, the notice tracked the statutory lan-
guage of § 47a-23 (a), as mandated by § 47a-23 (b).[7]

---

[7] The defendant cites *Jefferson Garden Associates* v. *Greene*, 202 Conn.
128, 520 A.2d 173 (1987), to demonstrate that the notice to quit should have
included specific allegations of lease violations. The defendant asserts that
*Jefferson Garden Associates* requires the notice to quit under § 47a-23 to
be specific enough to allow for a tenant to cure violations or defend against
them. Id., 143. As such, the defendant contends that simply stating that the
notice to quit was being served due to violations of the lease agreement
was insufficient. On the basis of our reading of *Jefferson Garden Associates*,
we conclude that although the Supreme Court mentioned § 47a-23, the
court's rationale focused on the notice required under General Statutes
§ 47a-15. This reading is supported by the fact that "[§ 47a-15's] notice provi-
sion has been interpreted to be separate from and preliminary to the mainte-
nance of a summary process action pursuant to [General Statutes] § 47a-
23." (Internal quotation marks omitted.) *Housing Authority* v. *Harris*, 225
Conn. 600, 605, 625 A.2d 816 (1993). Section 47a-15 is designed to provide
"notice to the tenant specifying the alleged violations and offer the tenant
a [period of time] to remedy." *St. Paul's Flax Hill Co-operative* v. *Johnson*,
124 Conn. App. 728, 734, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906,

Because the notice to quit adequately met the requirements of § 47a-23, the court improperly dismissed count one for lack of subject matter jurisdiction.

IV

The plaintiff's next two arguments are based on the dismissal of count six of the amended complaint, and the conclusions we reach as to each argument are interdependent. Accordingly, we address these two claims together. The plaintiff first contends that the court erred in not allowing the plaintiff to plead count six in the alternative. The plaintiff next contends that the court erred when it dismissed count six of the plaintiff's complaint because the notice to quit did not terminate the rental agreement between the parties.

The following additional facts are relevant to the resolution of the plaintiff's claim. Paragraph two of the parties' lease agreement provided that the lease was to terminate on June 30, 2009. The plaintiff filed a second notice to quit on June 30, 2009, asserting that the lease was terminated by lapse of time. The plaintiff then filed an amended complaint alleging in count six that there had been a termination of the lease through lapse of time specified in the lease agreement.

---

12 A.3d 1002 (2011). Under § 47a-15 "[i]f the tenant can remedy the violation by repair or by paying damages . . . the rental agreement continues. If the violation is not or cannot be remedied, the landlord may institute a summary process action . . . ." *Housing Authority* v. *Harris*, supra, 606. There is a clear distinction between the two statutory provisions: "A pretermination notice pursuant to § 47a-15 does not have the effect of terminating a tenancy or of altering the relationship of the landlord and tenant. . . . In contrast, it is well established that service of a notice to quit possession pursuant to § 47a-23 is typically an unequivocal act terminating a lease agreement with a tenant." (Citation omitted.) *St. Paul's Flax Hill Co-operative* v. *Johnson*, supra, 735. Thus, § 47a-15 requires a necessary level of specificity in order to provide the tenant with the opportunity to remedy the violation. In contrast, a notice to quit under § 47a-23 terminates the lease agreement, and there is no opportunity to remedy the violation. It follows that a notice to quit under § 47a-23 does not require the same level of specificity as required under § 47a-15.

The defendant filed a motion to strike count six of the amended complaint on September 10, 2009, asserting that it was legally insufficient to state a claim on which relief could be granted. Judge Young denied the motion on September 21, 2009, concluding that the plaintiff was entitled to plead in the alternative.

The defendant filed a motion to dismiss on October 6, 2009, contending that the first notice to quit served on April 8, 2009, terminated the lease and created a tenancy at sufferance. As such, the defendant contended that the lease was no longer in effect when the second notice to quit was served on the defendant, and, thus, the conclusion of the lease term was no longer effective. The court granted the motion to dismiss on November 23, 2009. The court determined that "[t]he first notice to quit terminated the lease and created a tenancy at sufferance. Consequently, at the time the second notice to quit was served for lapse of time under the lease, the lease agreement was no longer in effect. Accordingly, the sixth count of the complaint, which is premised on lapse of time pursuant to the second notice to quit, must be dismissed for lack of subject matter jurisdiction."

We begin with the relevant standard of review. "Service of a valid notice to quit, which terminates the lease and creates a tenancy at sufferance . . . is a condition precedent to a summary process action under § 47a-23 that implicates the trial court's subject matter jurisdiction over that action. . . . Thus, the defendants' motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss [is]

de novo." (Citations omitted; internal quotation marks omitted.) *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, 292 Conn. 459, 466–67, 974 A.2d 626 (2009).

"[Summary process] is preceded by giving the statutorily required notice to quit possession to the tenant. . . . Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease. The lease is neither voided nor rescinded until the landlord performs this act and, upon service of a notice to quit possession, a [leasehold] is converted to a tenancy at sufferance." (Citation omitted.) *Housing Authority* v. *Hird*, 13 Conn. App. 150, 155, 535 A.2d 377, cert. denied, 209 Conn. 825, 552 A.2d 433 (1988).

In the present case, the plaintiff filed its first notice to quit on April 8, 2009, and filed its original complaint against the defendant on April 24, 2009. While that claim was pending before the trial court, the plaintiff filed the second notice to quit, asserting lapse of time, on June 30, 2009. We first consider what effect the first notice to quit had on the lease agreement during the pendency of the action in the court and whether a second notice to quit based on the rental agreement could survive during that period.

In *Sproviero* v. *J.M. Scott Associates, Inc.*, supra, 108 Conn. App. 454, the landlord served a notice to quit on the tenants, and, after completion of a trial, the court found in favor of the tenants. Id., 458–60. The landlord sought, under the terms of the rental agreement, reimbursement for costs incurred for maintaining the septic system during the pendency of the legal action. Id., 462. This court determined that the landlord could not recoup those costs because "[u]pon service of the notice to quit possession, the plaintiffs' fixed tenancy

was converted to a tenancy at sufferance, and the plaintiffs temporarily were relieved of their obligation[s] [under the rental agreement]. *Accordingly, the lease was not in effect during the pendency of [the] litigation . . . .*" (Emphasis added.) Id., 463.

In addition, although not binding on this court, it is helpful to analyze Superior Court decisions that have dealt with this specific issue. Several courts have dismissed actions based on a second notice to quit where the first notice to quit was valid and terminated the lease. Those trial courts have followed the line of reasoning that if "the first notice to quit was a nullity, then it is of no effect and the second notice to quit is effective. If, on the other hand, the first notice to quit was effective at least for the purpose of terminating the rental agreement, then the second notice to quit can not effectively be based [on violations of a lease or rental agreement], as there would have been no contractual rental agreement in effect at the time." *Sammy Redd & Associates* v. *May*, Superior Court, judicial district of Hartford-New Britain at Hartford, Housing Session, Docket No. SPH-95376 (January 21, 1998) (22 Conn. L. Rptr. 107). Likewise, "[s]ince an action brought for lapse of time requires a landlord to prove the existence of an agreement, the service of the first notice to quit, if valid, would terminate any existing rental agreement and therefore render the notice to quit on which the present action is based invalid and deprive the court of subject matter jurisdiction." *Gifford* v. *Fore*, Superior Court, judicial district of New Britain, Housing Session, Docket No. 053590 (March 18, 2010) (49 Conn. L. Rptr. 741).

We conclude that because the first notice to quit terminated the lease agreement between the parties, there could be no cause of action based on lapse of time when the second notice to quit was served. As

made clear by *Sproviero*, a rental agreement is terminated when a valid notice to quit is served. The notice to quit terminates the lease, and the lease is no longer effective throughout the pendency of the trial court action. As this court determined in *Sproviero*, even if the trial court had found in favor of the tenants and the lease was reinstated, that would not mean that the lease was retroactively deemed effective from the time the notice to quit was filed. Furthermore, we agree with the Superior Court decisions that indicate that if the first notice to quit is technically valid and terminates the rental agreement, a second notice to quit based on terms in the rental agreement cannot survive a motion to dismiss for lack of subject matter jurisdiction. Common sense dictates that when a contractual rental agreement is no longer in place, such an agreement can no longer be violated.

The plaintiff's next contention is that the court erred in not allowing it to plead count six in the alternative. The plaintiff argues that it should have been permitted to plead count six in the alternative and to assert the second notice to quit in the event that the first notice to quit proved inadequate after trial. The plaintiff is correct in its assertion that it is entitled to plead various alternatives in its complaint, even when those assertions are contradictory. See *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 245, 492 A.2d 164 (1985) ("[u]nder our pleading practice, a plaintiff is permitted to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint"). The issue here, however, is the order in which the plaintiff pleaded count six in the complaint. The plaintiff could have pleaded both the violations of the rental agreement and the lapse of time claims in its complaint, if the first notice to quit asserted both claims. After the plaintiff served the first notice to quit, however, the rental agreement was terminated, and there no longer was a

rental agreement that could have lapsed. Thus, although the plaintiff may plead in the alternative, the plaintiff cannot hinge the second notice to quit on a term of the rental agreement, here the agreed upon conclusion of the rental agreement, when the lease had been terminated by the first notice to quit and thus was no longer in effect. Accordingly, the court did not err in dismissing count six of the amended complaint for lack of subject matter jurisdiction.

The judgment is reversed only as to the dismissal of count one of the amended complaint and the case is remanded for further proceedings as to that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.